LOPEZ, APPELLANT, *v.* OHIO DEPARTMENT OF TRANSPORTATION, APPELLEE.

(No. 87AP-36 — Decided June 11, 1987.)

*Connelly, Soutar & Jackson, William M. Connelly* and *James D. Caruso,* for appellant.

*Anthony J. Celebrezze, Jr.,* attorney general, and *William McDonald,* for appellee.

YOUNG, J. Appellant Robert Lopez was a passenger in a car driven by John M. Gawle, Jr. when an accident occurred. Gawle testified that he was driving down State Route 579, a straight, level, country road at a speed of forty to fifty miles per hour at approximately 2:00 a.m. when a car approaching him veered head-on into his lane causing him to lose control. Gawle admitted to not having had much sleep within the two days prior to the accident and he also admitted to having consumed one and one-half beers in the two hours before the accident.

When he lost control, Gawle swerved to the right, ran off the road, and struck the guardrail. Two of the three bolts on the end of the guardrail speared or snagged the passenger door, causing it to be torn from the automobile. Appellant, asleep in the passenger seat at the time, was thrown from the car and sustained severe injuries. Appellant filed this action against the Ohio Department of Transportation ("ODOT") asserting that ODOT had negligently designed,

constructed and maintained the guardrail and end posts. ODOT filed a third-party ·complaint against the driver, John M. Gawle, Jr., but dismissed this claim during the course of the trial.

The trial court heard the issue of liability only. The decision issued by the court held that ODOT was not negligent. Appellant now appeals and asserts the following two assignments of error:

"1. The trial court erred when it concluded as a matter of law that the state of Ohio was not negligent in its selection of the design, construction or maintenance of the flexible guardrail, including the end post involved in the accident giving rise to this litigation.

"2. The trial court erred when it concluded as a matter of law that the present case is 'almost identical to *Bowman* v. *Ohio Department of Transportation,* No. 83 A-516 [*sic*] (April, [*sic*, Aug.], 1984), 10th Dist. Ct. of Appeals (unreported),' and by following the holding in *Bowman.*"

In order to prevail on actionable negligence, the plaintiff must prove not only that there was a duty, but that the defendant breached its duty to the plaintiff and that the breach was the proximate cause of the injury sustained. See *Strother* v. *Hutchinson* (1981), 67 Ohio St. 2d 282, 21 O.O. 3d 177, 423 N.E. 2d 467. Appellant asserts that the trial court did not apply the correct standard in the instant case. It is appellant's position that the standard that should have been applied is whether ODOT breached its duty of care since it had actual or constructive notice of the defect in the guardrail and the danger of the exposed bolts.

Appellant submitted three exhibits to support his position that the appellee had actual or constructive notice of the alleged defect in the flexible steel-plate guardrail. First, appellant submitted an interdepartmental directive, No. D-75, dated October 11, 1957, which states in pertinent part:

"D. Erection

"1. The erection of all types of rail shall be made in conformance with the Bureau of Location and Design Standard Construction Drawings I-15. In the erection of Steel Beam (deep), Steel Beam (shallow), or Flexible Steel Plate (tension type), if wood posts are used, they are to be pentachlorophenol or creosote pressure treated and are not to be painted.

"2. The two or three end panels facing on-coming traffic, on all runs where shoulder width is sufficient, will be flared to help eliminate the possibility of vehicles striking the end post. See Standard Construction Drawing I-15.

"Similar flares shall be made on rail erected at bridge approaches.

"3. There may be instances where the need for rail can be eliminated through the action of possibly widening shoulders and lessening the slope steepness, placing tile in deep ditches and covering, etc. These possibilities should be given careful consideration before erecting rail.

"E. This policy is to become effective immediately upon start of plan development of new projects and is not to alter the plan of rail design or erection on projects for which plan production is under way."

Appellant contends that this directive demonstrates that ODOT had knowledge of the preference for flaring the end treatments on guardrails. Furthermore, the appellant offered as an exhibit the state of Ohio Construction and Materials. Specifications Manual which was in effect at the time of the construction of the guardrail. In Section I-15.06, Erection of Guard Rail, the manual states:

"* * * All bolts, except where otherwise required such as expansion joint bolts and adjustment bolts, shall be drawn tight. Bolts through expansion joints shall be drawn up as tight as possible without being tight enough to

prevent the rail elements from sliding past one another longitudinally. Bolts shall be sufficiently long to extend at least ¼ inch beyond the nuts. Except where required for adjustments, bolts shall not extend more than ½ inch beyond the nuts. Bolts through variable thickness posts shall be cut off and burred ¼ inch beyond the nuts."

Appellant offered testimony and photographs to show that the bolts on the end post protruded five inches beyond the nuts and that this particular guardrail had not been adjusted since its installation. Therefore, the bolts posed a hazardous condition and should have been cut off and burred ¼ inch beyond the nuts. Appellant also proffered an ODOT inter-office communication, dated September 29, 1967, which stated as follows:

"If you agree to the elimination of both flexible steel plate and shallow beam guardrail from new construction projects, I will proceed to rewrite the guardrail policy and during our pending revision of guardrail standards, remove the two items from Drawing GR-2. I would recommend this action because both types are no longer adequate to protect today's high speed heavy vehicles in collision."

Appellant asserts that this communication is an admission by appellee that the flexible steel-plate guardrail was defective.

Upon review of the evidence, the trial court applied the correct standard to the facts in the case at bar. Appellant had the burden to prove that the guardrail in question was not constructed in conformance with standards in effect either at the time it was planned (1955), approved (1957), or constructed (1959). Appellant failed to meet that burden by a preponderance of the evidence.

There is sufficient evidence to support the trial court's finding that the construction of the guardrail was not contrary to any state directive and that the terrain at the location of the accident did not lend itself to the construction of a flared end post. See *C. E. Morris Co.* v. *Foley Constr. Co.* (1978), 54 Ohio St. 2d 279, 8 O.O. 3d 261, 376 N.E. 2d 578. Appellant's expert testified that this type of guardrail could not be constructed with flared end sections since it operated on a tension principle. He also stated that such flaring would be difficult at this location due to the proximity of the ditch and the driveway.

Furthermore, there was sufficient evidence to rebut appellant's testimony that the bolts on the end post should have been cut to size so as not to protrude. The trial court found that the bolts on the end post were used for tension adjustment, although this particular guardrail had not been adjusted since its installation. Appellee's expert testified that in order to maintain the proper spring tension on a flexible steel-plate guardrail, the adjustment bolt is required to extend beyond the nut one inch for every one hundred feet of guardrail. Since this guardrail consisted of eight hundred feet, the five-inch protrusion was within reasonable limits. Moreover, it was the opinion of appellee's expert witness, Mr. Bronstad, that the bolts had no effect on the severity of the accident.

The inter-office memorandum of September 29, 1967, is not an admission by appellee that the flexible steel-plate guardrail was defective. The memorandum only discusses the general recognition of improved guardrail designs. It does not prove that the flexible steel-plate guardrail was either obsolete, dangerous or hazardous. See 2 Restatement of the Law 2d, Torts (1965) Sections 291 and 293; *Cremeans* v. *International Harvester Co.* (1983), 6 Ohio St. 3d 232, 6 OBR 302, 452 N.E. 2d 1281. Thus, appellant failed to show that the state had actual or constructive notice that this particular type of guardrail was obsolete, hazardous or

dangerous. Nor did he prove that the state failed to upgrade the guardrail to eliminate the hazard. Consequently, appellant has failed to prove any basis for negligence on the part of ODOT. Therefore, this court is in full agreement with the trial court's finding that the state was not negligent in its selection of the design, construction or maintenance of the flexible guardrail, including its end post. Furthermore, the record reflects that the design and construction of this particular guardrail was in conformance with generally accepted standards that were in effect in Ohio throughout the late 1950s.

Based on the foregoing, appellant's first assignment of error is not well-taken and is overruled.

Appellant's second assignment of error asserts that the trial court erred when it concluded, as a matter of law, that the present case is almost identical to *Bowman* v. *Ohio Dept. of Transp.* (Aug. 30, 1984), Franklin App. No. 83AP-516, unreported. In *Bowman,* this court affirmed the trial court's holding that the state was not negligent in the initial construction and subsequent updating of the guardrail. Given this court's disposition of appellant's first assignment of error, this court affirms the trial court's holding that the appellant has failed to prove that the state was negligent in its selection, construction or maintenance of flexible guardrail including the end post.

In comparing the facts of the case at bar with the facts of *Bowman,* there are more similarities than differences. However, it was on the basis of a conclusion of law, not a finding of fact, that the trial court found the cases to be almost identical. In comparing the legal issues, the plaintiffs in both cases presented evidence to show that the state was negligent in designing and installing the guardrail it chose and that the state was negligent in its duty to maintain the guardrail in question. Furthermore, the plaintiffs in both cases presented evidence that the guardrails in each instance were the proximate cause of increasing the severity of the injuries sustained by the victim. Thus, the trial court did not abuse its discretion in concluding that the legal issues presented in both cases are almost identical. *Chester Twp.* v. *Geauga Cty. Budget Comm.* (1976), 48 Ohio St. 2d 372, 2 O.O. 3d 484, 358 N.E. 2d 610; *Seasons Coal Co.* v. *Cleveland* (1984), 10 Ohio St. 3d 77, 10 OBR 408, 561 N.E. 2d 1273.

Accordingly, appellant's second assignment of error is not well-taken and is overruled.

Based on the foregoing, the judgment of the Court of Claims of Ohio is affirmed.

*Judgment affirmed.*

BOWMAN and COOK, JJ., concur.

COOK, J., of the Eleventh Appellate District, sitting by assignment in the Tenth Appellate District.