TREESE et al., Appellees,

v.

CITY OF DELAWARE, Appellant;

Ohio Department of Transportation, Appellee.

[Cite as *Treese v. Delaware* (1994), 95 Ohio App.3d 536.]

Court of Appeals of Ohio,
Franklin County.

No. 93API10–1433.

Decided June 21, 1994.

*McCarthy, Palmer, Volkema & Becker* and *William C. Becker,* for appellees.

*Earl, Warburton & Adams* and *Dick M. Warburton, Jr.,* for appellant Delaware.

*Lee Fisher,* Attorney General, and *Jeffrey R. Goldsmith,* Assistant Attorney General, for appellee Ohio Department of Transportation.

WHITESIDE, Presiding Judge.

Defendant/third-party plaintiff-appellant, city of Delaware, appeals from a judgment of the Ohio Court of Claims and raises the following three assignments of error:

"1. The Court of Claims erred in finding that since the guardrail in question was built before the passage of the Court of Claims Act, the court had no jurisdiction."

"2. The Court of Claims erred in finding that the Ohio Department of Transportation was immune from liability for failing to upgrade the guardrail system at the 42/23 overpass."

"3. The Court of Claims erred in sustaining the summary judgment motion of third-party defendant and remanding the case to Delaware County Common Pleas Court for trial."

Plaintiff Mel A. Treese ("plaintiff") filed a complaint against the city of Delaware ("Delaware") in the Delaware County Court of Common Pleas, seeking damages for personal injury as a result of a car accident from an alleged defective guardrail system that increased the severity of his injuries. Delaware filed a third-party complaint against the state of Ohio, Department of Transportation ("ODOT"), for indemnification, since the state installed the guardrail. The case was removed to the Court of Claims pursuant to R.C. 2743.03.

The Court of Claims granted ODOT's motion for summary judgment, stating as follows:

"Upon review of the arguments presented, the original design and placement of the guardrail are acts that occurred before the Court of Claims Act and the court is without jurisdiction over these acts. *Kristine Miller v. Ohio Dept. of Trans-*

*portation* (1993), Ct. of Claims No. 91–12601, unreported." (Entry, Sept. 22 1993, p. 1–2.) [1]

The Court of Claims then remanded the case to the Delaware County Court of Common Pleas. Delaware timely appealed that judgment.

By the first assignment of error, Delaware contends that the Court of Claims erred in finding that it had no jurisdiction. R.C. 2743.02 establishes that the Court of Claims "has exclusive, original jurisdiction of all civil actions against the state permitted by the waiver of immunity contained in section 2743.02 of the Revised Code." However, the Court of Claims lacks subject-matter jurisdiction over civil claims against the state that are not within the scope of the state's waiver of immunity. See *Jones v. Ohio Dept. of Health, Div. of Pub. Health & Laboratories* (1990), 69 Ohio App.3d 480, 483, 591 N.E.2d 245, 247, citing *Aratari v. Ohio Dept. of Rehab. & Corr.* (1976), 48 Ohio App.2d 239, 2 O.O.3d 194, 356 N.E.2d 759. Therefore, the Court of Claims has jurisdiction over claims for which the state has waived its immunity. The state waived its immunity in 1975 when the General Assembly passed the Court of Claims Act (Am.Sub.H.B. No. 800, R.C. Chapter 2743).[2] Consequently, it must be determined whether such a claim for relief may be entertained in that court.

The trial court relied on another Court of Claims decision, *Miller v. Ohio Dept. of Transp.* (1993), 63 Ohio Misc.2d 363, 629 N.E.2d 1124, as the basis for its determination. *Miller* involved a plaintiff who alleged that ODOT was negligent in its design and construction of the area in which the plaintiff was involved in a car accident. The area was designed and constructed before the effective date of the Court of Claims Act, but the accident occurred in 1981. The Court of Claims in that case held that it did not have jurisdiction over negligent acts which occurred before the state permitted itself to be sued. The court stated:

" * * * No cause of action accrues unless the act or omission upon which it is premised is within the ambit of the Court of Claims Act, which is a jurisdictional prerequisite to bringing the cause of action. It being quite plain that the acts here complained of were well before the state abrogated its immunity from suit for such acts, and the Act's express terms limiting it to acts or omissions occurring after its effective date, no cause of action can possibly arise from the acts or omissions here at issue." *Miller, supra,* at 368, 629 N.E.2d at 1127.

---

1. *Miller* has since been reported. The citation is (1993), 63 Ohio Misc.2d 363, 629 N.E.2d 1124.

2. The effect of the abolishment of common-law governmental immunity is not raised or determined herein. However, Section 16, Article II, Ohio Constitution provides that the General Assembly may specify what courts have jurisdiction to hear actions against the state.

The court in *Miller* premised its decision upon an erroneous understanding of Section 3, Am.Sub.H.B. 800, and a decision from this court, *Jones, supra.*

*Jones* did not involve the same issue present in *Miller* and this case. In *Jones*, the alleged negligent acts occurred and the cause of action arose prior to the effective date of the Court of Claims Act. The injury was discovered in 1972, and plaintiff argued that the cause of action did not arise until after the effective date of the Court of Claims Act. This court held that the cause of action accrued, not upon the creation of the Court of Claims, but upon discovery of the injury in 1972.

This court in *Jones* also determined that Section 3 of the Court of Claims Act, Am.Sub.H.B. No. 800, provided only a limited opportunity for filing suits against the state based on causes of action that *accrued* before January 1, 1975. See *Jones*, 69 Ohio App.3d at 484, 591 N.E.2d at 247–248. Section 3 of the Court of Claims Act provides:

"This act shall take effect on January 1, 1975. Notwithstanding section 2743.16 of the Revised Code, enacted herein, *all actions commenced against the state* under this chapter prior to July 1, 1975 *shall be timely if commenced within two years of accrual of the cause of action* or if commenced within whatever period of limitations would have been applicable to the particular cause of action if commenced against a private party. * * *" (Emphasis added.) Am.Sub.H.B. No. 800, Section 3 (1975).

This court interpreted Section 3 as stating:

" * * * Section 3 provides that such a suit is not subject to the two-year limitations period specified in R.C. 2743.16. Rather, *a suit based on a cause of action that accrued before January 1, 1975* is deemed to be timely filed if two requirements are met. First, the suit must be commenced prior to July 1, 1975. Second, the suit must be commenced within either two years of accrual of the cause of action or within the period of limitations applicable to a similar suit between private parties." (Emphasis added.) *Jones, supra*, 69 Ohio App.3d at 484, 591 N.E.2d at 247.[3]

Since the plaintiff in *Jones* had not filed the action within either of the limitation periods provided in Section 3, the claim was barred. However, that situation is not the one involved in the case at hand. In *Jones*, the cause of action accrued before the effective date of the Court of Claims Act. Here, the cause of action did not accrue until long after the effective date of the Court of Claims Act. Section 3 of the Court of Claims Act pertains only to causes of action which *accrued* prior to the effective date of the Court of Claims Act. In *Miller*, as here,

---

3. R.C. 2743.16 prospectively establishes a two-year limitation period for all causes of action brought under the Court of Claims Act.

the trial court mistakenly applied Section 3 to an action which accrued after the effective date of the Court of Claims Act. The trial court in both *Miller* and this case confused the time of a negligent act with the accrual of a cause of action.

In this case, the cause of action accrued after the effective date of the Court of Claims Act, even though the alleged negligence occurred before the effective date. The Supreme Court of Ohio held in the second paragraph of the syllabus of *Velotta v. Leo Petronzio Landscaping, Inc.* (1982), 69 Ohio St.2d 376, 23 O.O.3d 346, 433 N.E.2d 147:

"When negligence does not immediately result in damages, a cause of action for damages arising from negligent construction does not accrue until actual injury or damage ensues." See, also, *Sedar v. Knowlton Constr. Co.* (1990), 49 Ohio St.3d 193, 198, 551 N.E.2d 938, 943–944.

Therefore, the cause of action here arose not when the negligent act occurred but instead when plaintiff was involved in the accident causing the injuries, for which damages are sought. This was after the effective date of the Court of Claims Act because the accident occurred in March 1990.

*Starkey v. Cho* (1990), 69 Ohio App.3d 763, 591 N.E.2d 1271, is a similar case. *Starkey* involved personal injury in 1986 in a state park that was designed and built before the effective date of the Court of Claims Act. Plaintiffs in that case alleged that the Ohio Department of Natural Resources negligently designed and built the park. This court determined in *Starkey* that the cause of action accrued when the injury occurred in 1986.[4] The trial court's decision in this case is inconsistent with this holding of *Starkey*.

Thus, the trial court erred in determining that it had no jurisdiction, since the Court of Claims has subject-matter jurisdiction over claims against the state for negligent acts causing injury. The issue was whether a claim for relief could be maintained in that court based upon a negligent act that occurred prior to 1975, but which caused injury to the plaintiff in 1990. Consequently, Delaware's first assignment of error is well taken.

By the second assignment of error, Delaware contends that the Court of Claims erred in finding that ODOT was immune from liability for failing to upgrade the guardrail system. The trial court stated as follows:

"Additionally, any decision of ODOT to upgrade the guardrail system within a municipal corporation is a planning discretionary decision which is immune from liability. *Reynolds v. State* (1984), 14 Ohio St.3d 68 [14 OBR 506, 471 N.E.2d

---

4. In *Starkey,* we affirmed on alternative grounds, namely that the trial court correctly found that the state was not negligent.

776]; *Winwood v. Dayton* (1988), 37 Ohio St.3d 282 [525 N.E.2d 808]." (Entry, Sept. 22 1993, p. 2.)

Delaware argues that, even if ODOT somehow had no duty to upgrade the guardrail system once construction was completed to conform to standards which were developed after the guardrail was constructed, at a minimum, ODOT should be required to construct highways which conform to standards at the time of construction. Maintenance does not necessarily include the redesigning or reconstructing of highways. In *Wiebelt v. Ohio Dept. of Transp.* (June 24, 1993), Franklin App. No. 93AP–117, unreported, at 4, 1993 WL 238846, this court recognized this principle [5] as follows:

" * * * Maintenance involves only the preservation of existing highway facilities, rather than the initiation of substantial improvements. This court has held that ODOT has no duty to upgrade highways to current design standards when acting in the course of maintenance. *Lunar v. Ohio Dept. of Transp.* (1989), 61 Ohio App.3d 143, 149 [572 N.E.2d 208, 211–212]."

 Delaware contends that ODOT did not comply with the design standards that were in effect at the time the guardrail was built. ODOT does have a duty to comply with standards that were in effect at the time the guardrail was originally constructed. See *Lopez v. Ohio Dept. of Transp.* (1987), 37 Ohio App.3d 69, 523 N.E.2d 891. Delaware submitted an affidavit of the Chief Building Official and Plans Examiner for Washington, Meigs and Noble Counties in Ohio. In his affidavit, he stated that the guardrail in question did not conform to the standards of the state of Ohio at the time it was constructed. The affiant stated:

" * * * [T]he guardrail system at said accident location is a Type 4 with guardrail posts located on twelve foot, six inch (12′ 6″) centers and without setoff blocks. Affiant further says that said guardrail system did not comply with the standards of the State of Ohio at the time it was constructed between 1965 and 1968.

" * * *

"Affiant further says that while pursuant to the Affidavit of Larry Sutherland of the Ohio Department of Transportation, the highway improvement, including the guardrail in question would have been under construction, the State of Ohio, Department of Transportation issued a directive * * *.

---

5. However, *Wiebelt* does not establish whether maintenance may include "upgrading" of a highway that has become a nuisance because of design defects under present design standards and of present use.

"Affiant further says that this directive was not complied with at the scene of the Mel Treese accident and that the entire guardrail system * * * maintains twelve foot, six inch (12′ 6″) centers without offset blocks." (Bir affidavit, at 2–3.)

Additionally, the affiant stated that, if the correct guardrail had been constructed, in his opinion, the plaintiff's vehicle "would not have vaulted the guardrail and/or rolled down the embankment located immediately south of the guardrail." (Bir affidavit, at 4.)

The "directive" issued by the state of Ohio was attached as Exhibit A to the Bir affidavit and was a communication from the Deputy Director of Design and Construction of the Ohio Division Directors & Division of Design & Construction Personnel. It was entitled, "Application of Safety Requirements to Projects Under Construction" and dated October 18, 1967. In the communication, guardrail requirements were listed as the following:

"Guardrail—Deep steel beam type.

"I. 6′—3″ post spacing

"(a) Add posts as required.

"(b) Add washers.

"(c) Relocate posts to provide 2′ minimum clearance between paved shoulder and face of rail.

"II. Offset blocks

"(a) Provide blocks (of 6″ minimum thickness) between posts and back of rail. * * *" (Exhibit A to Bir affidavit, at 3.)

The guardrail in question does not meet these standards. However, there is no direct evidence as to exactly when the construction was either commenced or completed in order to determine whether these standards applied to this project.

An affidavit submitted by ODOT states:

" * * * The project was drawn prior to receiving approval for the contract bid. The approval for the project began in 1964. The project was completed before November 25, 1968 because that is the date that the plans were microfilmed. It is the policy of the Department of Transportation not to microfilm the drawings of a project until the work has been completed and the project accepted as completed." (Sutherland affidavit, at 2.)

However, in the absence of evidence that the project was completed before the new standards were adopted apparently in 1967, construing the evidence most strongly in Delaware's favor, the project was in construction in 1967 when the standards were adopted and completed sometime in 1968. Under such circumstances, ODOT had a duty to comply with the standards which were in effect

during the time that the guardrail was being constructed. See *Lopez, supra.* Therefore, the Court of Claims erred in finding that ODOT was immune from liability for failing to upgrade the guardrail system, since the "upgrade" initially should have been constructed in the exercise of ordinary care. Consequently, Delaware's second assignment of error is well taken.

However, the statute of repose, R.C. 2305.131, may be applicable in this case. The trial court did not reach this issue even though it was raised because the trial court misapplied Section 3 of the Court of Claims Act, Am.Sub.H.B. No. 800. R.C. 2305.131 provides as follows:

"No action to recover damages for any injury to property, real or personal, or for bodily injury or wrongful death, *arising out of the defective and unsafe condition of an improvement to real property, nor any action for contribution or indemnity for damages sustained as a result of said injury,* shall be brought against any person performing services for or furnishing the design, planning, supervision of construction, or construction of such improvement to real property, *more than ten years after the performance or furnishing of such services and construction. This limitation does not apply to actions against any person in actual possession and control as owner, tenant, or otherwise of the improvement* at the time the defective and unsafe condition of such improvement constitutes the proximate cause of the injury or damage for which the action is brought." (Emphasis added.)

The statute of repose bars any claim after ten years regardless of when it arose. A statute of repose bars the claim itself while a statute of limitations bars an action to seek relief for a claim. The statute begins to run when the improvement to the real estate is constructed. See *Cincinnati Ins. Co. v. Wylie* (1988), 48 Ohio App.3d 289, 549 N.E.2d 1198. The construction in this case was completed no later than November 25, 1968. Since more than ten years have passed since construction of the guardrail, Delaware's action for indemnity is barred unless ODOT was in possession and control as owner at the time of plaintiff's accident.

ODOT argues that, since Delaware is responsible for maintenance, ODOT is relieved of responsibility. However, maintenance alone does not determine possession or control. ODOT also argues that it is relieved of responsibility, since the trial court found that the accident occurred in the city of Delaware. The trial court stated:

"Additionally, any decision of ODOT to upgrade the guardrail system within a municipal corporation is a planning discretionary decision which is immune from liability." (Entry, Sept. 22, 1993, at 2.)

However, the trial court did not make any specific findings of fact, and this sentence is not indicative of such a finding, nor indicative that ODOT was not in

control.[6] Consequently, unless the state was in control as owner, the statute of repose bars this action. This is a determination the trial court must make upon remand.

By the third assignment of error, Delaware contends that the Court of Claims erred in sustaining the summary judgment motion of third-party defendant and remanding the case to Delaware County Common Pleas Court for trial upon the issues between the other parties. In light of our conclusion in the first assignment of error that the trial court erred in sustaining the summary judgment motion, it is inappropriate to remand the case to the Delaware County Court of Common Pleas at this time. Consequently, Delaware's third assignment of error is well taken.

For the foregoing reasons, all three assignments of error are sustained, the judgment of the Ohio Court of Claims is reversed, and this cause is remanded to that court for further proceedings in accordance with law and consistent with this opinion.

*Judgment reversed*
*and cause remanded.*

PEGGY L. BRYANT and REILLY, JJ., concur.

ARCHER E. REILLY, J., retired, of the Tenth Appellate District, was assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution.

---

6. See, *e.g.*, R.C. 5501.31, 5501.32, 5511.01, and 5521.01.