MILLER, A Minor, et al., Appellants and Cross–Appellees,

v.

STATE of Ohio, ODOT, et al., Appellees and Cross–Appellants.*

Court of Appeals of Ohio,
Sixth District, Erie County.

No. E–99–082.

Decided May 4, 2001.

---

* Reporter's Note: An appeal to the Supreme Court of Ohio was dismissed as having been improvidently allowed in 95 Ohio St.3d 1216, 2002-Ohio-2216, 767 N.E.2d 730.

James T. Murray, for appellants and cross-appellees.

Betty D. Montgomery, Attorney General, Peter E. DeMarco and Michael J. Valentine, Assistant Attorneys General, for appellees/cross-appellants.

William W. Owens, for amicus curiae city of Sandusky.

---

KNEPPER, Judge.

{¶ 1} This is an appeal from the judgment of the Erie County Court of Common Pleas which, following a jury trial, awarded judgment against appellants, Kristine A. Miller, Bruce A. Miller, Carol Miller, and each of the Millers as assignees of the city of Sandusky, on their claims against appellees, the state of Ohio and the Ohio Department of Transportation ("ODOT") (collectively referred to as "the state"). Both appellants and the state filed a notice of appeal.

{¶ 2} On appeal, appellants raised the following assignments of error:

{¶ 3} "I. The court erred in trying the case *de novo*. The issues of negligent design and damages had already been decided. The state of Ohio was bound by the decision against its predecessor in interest, the city of Sandusky, to whom it was bound by contractual privity in the project.

{¶ 4} "II. The court erred when it refused to permit the prior trial testimony of Christine Gesell to be used at trial.

{¶ 5} "III. The court erred in not accepting the judicial admissions made by the state of Ohio in its opening statement and by permitting the state of Ohio to argue to the jury facts which were in opposition to the facts which were stated in the opening statement.

{¶ 6} "IV. The court should have allowed Mr. Murray to cross-examine the state's experts based on the differences between the facts they stated in their reports and the facts they stated in their testimony."

{¶ 7} In its cross-appeal, the state raises the following assignments of error:

{¶ 8} "A. The court of common pleas of Erie County lacked subject matter jurisdiction over the complaint for money damages against the state of Ohio.

{¶ 9} "B. R.C. 2307.32(B) mandates that before a tortfeasor which has settled a case against it may bring an action for contribution against another alleged tortfeasor, the settling tortfeasor must extinguish the liability of the party it intends to sue.

{¶ 10} "C. Where a tortfeasor has been adjudicated to be actively negligent, that tortfeasor is not entitled to indemnification.

{¶ 11} "D. Where the parents of an injured child do not file their derivative claim within the applicable limitation period, the action should be dismissed."

{¶ 12} This matter arose as a result of a lengthy procedural history. On October 31, 1981, Bruce and Carol Miller ("the Millers") were involved in an automobile accident in Sandusky, Ohio, with Christine Gesell, who, from a private driveway, was entering an egress road that was designated as Frontage Road "E" and was commonly known as the Milan Road overpass ("Milan Road"). At the time of the accident, Carol Miller was approximately six months pregnant with Kristine. Following the accident, Kristine was born prematurely and suffered loss of vision. In a previous action, the Millers sued Gesell and settled the case against her. Appellants also sued the city of Sandusky in a previous action for negligence. On May 6, 1991, the jury awarded the Millers judgment against the city and stated the following:

{¶ 13} "If you find by a preponderance of the evidence that the defendant, City of Sandusky, was negligent and that such negligence was a proximate cause of the plaintiffs' injuries, then state each act or omission to act of the defendant which you find to have constituted negligence."

{¶ 14} The jury then wrote into the verdict form:

{¶ 15} "The city of Sandusky created a nuisance—namely a sight obstruction which made the egress road (Milan Rd.) hazardous for the normal mode of transportation for the reasonably careful & prudent driver. The sight obstruction is basically due to an act & also a failure to act. The act was to allow the 2200 Milan Rd. address to exist too close to the roadway. The failure to act was the failure to notify the Northbound egress Rd. (Milan Rd.) driver of the hazard of hidden or unexpected commercial service—use drive either by pavement channeling (lines painted on the road) or signs or flashing lights or by closing the drive adjacent to 2200 Milan Rd. and providing an alternate exit. The City of Sandusky also failed to act in the removal of existing light poles or better placement of those poles."

{¶ 16} The jury awarded $7.8 million in damages to appellants. The city then sued ODOT in the Court of Claims for contribution and indemnification. On February 12, 1992, appellants entered into an agreement with the city, wherein in exchange for seeking full satisfaction of the $7,894,000 judgment against the city, plus prejudgment interest, appellants accepted $3.5 million in settlement. Also as part of the agreement, the city assigned to appellants "any and all rights that the City has or may have against the State of Ohio, the Ohio Department of Transportation and/or other persons (with the exception of Buckeye [the city's insurer]) * * *."

{¶ 17} According to the decision and judgment entry of the Court of Claims, appellants intervened on behalf of the city on its claim against ODOT for contribution. Additionally, the Court of Claims stated that appellants' principal assertion was that ODOT "negligently designed and constructed the area of the accident such that oncoming vehicles could not have a clear view of one another." In the Court of Claims action, ODOT requested leave to file a Civ.R. 56 motion for summary judgment. The court denied ODOT's motion because it was untimely and raised too near the trial date; however, the court informed ODOT that its legal issues could be raised on the morning of trial. The court noted that a pretrial conference took place on February 5, 1993, wherein the court inquired as to the issue of whether there was jurisdiction in the Court of Claims to entertain actions premised upon events occurring prior to the effective date of the Court of Claims Act, R.C. Chapter 2743. On the day of trial, February 8, 1993, the parties argued their respective positions regarding jurisdiction. The matter was considered within the framework of ODOT's motion for summary judgment, as well as a motion to dismiss for lack of jurisdiction.

{¶ 18} ODOT argued that the state could not be sued for negligent acts committed at a time when it could not be sued for negligence in the first place, insofar as such acts "are not actionable because they fall outside the state's waiver of sovereign immunity." The Court of Claims granted ODOT's motion to dismiss for lack of jurisdiction on March 10, 1993. *Miller v. Ohio Dept. of Transp.* (1993), 63 Ohio Misc.2d 363, 629 N.E.2d 1124. Specifically, the court stated as follows:

{¶ 19} "It is axiomatic that no cause of action could be maintained against the state prior to the enactment of the Court of Claims Act, the effective date of which was January 1, 1975, except to the extent the state had previously permitted itself to be sued. See, *e.g., Krause v. State* (1972), 31 Ohio St.2d 132, 60 O.O.2d 100, 285 N.E.2d 736. Prior to that date, sovereign immunity was applicable to shield the state from liability for its acts and omissions. However, the issue has arisen whether a cause of action accrues if an act or omission of the state that occurs prior to the Court of Claims Act gives rise to an injury sometime well after the effective date of the Act." *Miller* at 366, 629 N.E.2d 1124.

{¶ 20} Upon consideration of whether the Court of Claims Act vested the Court of Claims with jurisdiction to consider appellants' claim, the court held that "[n]o cause of action accrues unless the act or omission upon which it is premised is within the ambit of the Court of Claims Act, which is a jurisdictional prerequisite to bringing the cause of action." Id. at 368, 629 N.E.2d 1124.

{¶ 21} The court further held that "the acts here complained of were well before the state abrogated its immunity from suit for such acts * * *." Id.

{¶ 22}  Accordingly, because the Court of Claims determined that the cause of action accrued in 1969 when the roadway was completed and because the express terms of the Court of Claims Act, which limits its applicability to acts or omissions occurring after its effective date (1975), the Court of Claims held that "no cause of action can possibly arise from the acts or omissions here at issue" and dismissed appellants' suit against the state.  Appellants never appealed the judgment of the Court of Claims but instead filed the present action in the Erie County Court of Common Pleas.

{¶ 23}  On October 28, 1994, the state filed a motion to dismiss appellants' case in the court of common pleas on the basis that it lacked jurisdiction over an action for money damages against the state of Ohio. The state, citing Section 16, Article I of the Ohio Constitution, and *Krause v. State* (1972), 31 Ohio St.2d 132, 60 O.O.2d 100, 285 N.E.2d 736, restated its previous arguments that prior to the enactment in 1975 of the Court of Claims Act, R.C. Chapter 2743, no cause of action could be maintained against the state in the court of common pleas, except to the extent that the state had previously permitted itself to be sued.  Pursuant to the enactment of R.C. Chapter 2743, actions for money damages against the state and its agencies could be brought only in the Court of Claims.  *Boggs v. State* (1983), 8 Ohio St.3d 15, 8 OBR 84, 455 N.E.2d 1286.  As such, the state argued that because the design and construction of the highway, the alleged negligent act of the state, occurred prior to the enactment of the Court of Claims Act, appellants' claim was barred by the doctrine of sovereign immunity.  The state further argued that "[t]he fact that the accident from which [appellants] are claiming injury occurred on October 31, 1981, does not alter the state's immunity from suit, and no civil action for money damages arising from this accident can be maintained against the state in this or any other court."

{¶ 24}  The state, however, did cite *Treese v. Delaware* (1994), 95 Ohio App.3d 536, 642 N.E.2d 1147, which was factually similar to *Miller v. Ohio Dept. of Transp.* (1993), 63 Ohio Misc.2d 363, 629 N.E.2d 1124, but decided subsequent thereto.  In *Treese,* the Franklin County Appellate Court held that the cause of action actually accrued at the time of the accident, which was after 1975, rather than at the time of the construction of the defective guardrail system, which was prior to the enactment of the Court of Claims Act. Nevertheless, the state pointed out that the *Treese* decision did not change the fact that the Erie County Common Pleas Court had no jurisdiction over appellants' complaint and that the dismissal by the Court of Claims does not give the court of common pleas jurisdiction.  Further, the state argued that appellants could have appealed the Court of Claims' dismissal; however, their failure to do so bars them from litigating their action in the Court of Claims because it had already been dismissed in that court.  Appellants also could not bring their action in the court

of common pleas because sovereign immunity still applied to prevent appellants' claims against ODOT for money damages. Hence, the state argued that due to appellants' chosen course of litigation, they were left without any forum in which to bring their case.

{¶ 25} In response to the state's motion to dismiss, appellants argued that the state was inconsistently changing its argument regarding jurisdiction. According to appellants, the state previously argued that the Court of Claims was without jurisdiction to hear the matter and then argued in its motion to dismiss that the Court of Claims, in fact, was the proper forum. Appellants argued that the state was not permitted to take a position contrary to that which it already had taken. Appellants next argued that subsequent to the enactment of the Court of Claims Act, if the Court of Claims was unavailable, an action which might otherwise be brought in the court of common pleas, "such as a claim against the individual state officer or employee from the same transaction," may be pursued in the court of common pleas. Appellants further argued that the legislature, which created the Court of Claims Act, contemplated that certain actions could be filed in other courts. Specifically, appellants argued that a party must be given an opportunity to redress a right to a remedy at a meaningful time and in a meaningful manner.

{¶ 26} Appellants additionally argued that "the state foreclosed the plaintiff from being heard in the Court of Claims by arguing that the Court of Claims has no jurisdiction. That argument, and the acceptance of that argument by the Court of Claims, is now the law of the case." As such, appellants argued that "the state must now accept that for a meaningful remedy to exist, as required by the Constitution, Kristine Miller must be able to seek redress in an alternative forum," i.e., the court of common pleas.

{¶ 27} On May 21, 1997, the court of common pleas denied the state's motion to dismiss and found that it had jurisdiction over the matter. The court of common pleas stated the following in its decision:

{¶ 28} "Plaintiffs argue that [the state argued in] the Court of Claims * * * that they did not have jurisdiction and, at the same time, now argue that they are the only court with jurisdiction. Plaintiffs believe that by denying the suit in the Court of Claims, the state has given its consent to be sued in the Common Pleas Court. Where a public official is sued in his official capacity for failure to perform a ministerial duty, the case would have been properly venued in the Court of Common Pleas, had the state permitted itself to be sued. *Scot Lad Foods v. Secretary of State*, 66 Ohio St.2d 1, 12, 20 O.O.3d 1, 418 N.E.2d 1368 (1981)."

{¶ 29} The state filed for a writ of prohibition with the Ohio Supreme Court, which was denied. On October 26, 1998, the state filed a motion for reconsideration of the court of common pleas' denial of its motion to dismiss for lack of jurisdiction. The state's motion for reconsideration was never ruled upon and, therefore, we deem it denied. See *Maust v. Palmer* (1994), 94 Ohio App.3d 764, 769, 641 N.E.2d 818.

{¶ 30} Also on October 26, 1998, the state filed a motion for judgment on the pleadings on the defense of sovereign immunity. In its motion for judgment on the pleadings, the state argued that even though it consented to be sued when it waived sovereign immunity in 1975, with the enactment of the Court of Claims Act, the state did not make an absolute waiver of immunity. The state argued that the decisions made by the state in the construction of Milan Road were exercises of the planning function of the government that involved the making of basic policy decisions, characterized by the exercise of a high degree of official judgment and discretion. As such, the state argued that its actions fell within an exception to the general waiver of immunity and, therefore, sovereign immunity would still apply in this instance. Without discussion of any sort, the court of common pleas denied the state's motion on February 22, 1999.

{¶ 31} On November 1, 1999, the state again attempted to have the matter dismissed by asserting that if appellants dismissed their cause of action against the state and refiled in the Court of Claims, it would not contest the Court of Claims' jurisdiction over the matter. The state's motion to dismiss the entire cause of action was denied without comment on November 30, 1999.

{¶ 32} In its cross-appeal, the state argues in its first assignment of error that the court of common pleas did not have jurisdiction over appellants' complaint for money damages against the state of Ohio. Specifically, the state argues, as it did in the court of common pleas, that prior to the enactment of the Court of Claims Act in 1975, the state was immune, unless it agreed to be subjected to suit. Subsequent to 1975, actions for money damages against the state and its agencies could only be brought in the Court of Claims.

{¶ 33} With respect to this case, the Court of Claims held that it did not have jurisdiction because the cause of action accrued at the time the road was constructed, 1969, which was prior to the establishment of the Court of Claims. The state points out that subsequent to the Court of Claims' ruling in this case, the Franklin County Court of Appeals determined that actions accrue against the state not at the time of the alleged negligence, e.g., the construction of the road, but at the time of the accident. Hence, the state argues that it is now evident that the Court of Claims was always the proper court for appellants' action. Nevertheless, because appellants failed to appeal the Court of Claims' judgment,

the matter is barred by the doctrine of res judicata from being relitigated. The state further argues that the fact that appellants cannot proceed in the Court of Claims does not ipso facto mean that the court of common pleas has jurisdiction over the matter. Rather, because the matter was deemed by the Court of Claims to have accrued prior to 1975, the doctrine of sovereign immunity still acts to bar appellants' causes of action against the state.

{¶ 34} In response, appellants argue that the state's arguments on appeal are "[i]n direct opposition to its earlier arguments in the Court of Claims." Specifically, appellants assert that the state previously argued that appellants' cause of action arose in 1969 when the overpass was negligently constructed, not in 1981 when the collision occurred, but that the state now argues that the cause of action actually accrued at the time of the collision. As such, appellants argue that the state is estopped from changing its position. Additionally, appellants assert the same arguments as they had in the court of common pleas, specifically, (1) by seeking a dismissal in the Court of Claims, the state invoked the jurisdiction of the court of common pleas and voluntarily submitted to its jurisdiction, (2) before the enactment of the Court of Claims Act in 1975, the state was subject to liability in the court of common pleas for negligence, (3) if the Court of Claims is not available, those actions which may be filed in the court of common pleas may be pursued, (4) having successfully argued that there was no jurisdiction in the Court of Claims, ODOT is subject to suit in another forum and appellants are entitled to redress at a meaningful time and in a meaningful manner, i.e., in the court of common pleas, and (5) ODOT invited the error in the Court of Claims and should now not benefit by that error.

{¶ 35} Prior to the enactment of the Court of Claims Act in 1975, the state was immune from suit in tort unless the legislature or judiciary established that the state could be sued. See *Krause v. State* (1972), 31 Ohio St.2d 132, 60 O.O.2d 100, 285 N.E.2d 736; and *Schenkolewski v. Cleveland Metroparks Sys.* (1981), 67 Ohio St.2d 31, 21 O.O.3d 19, 426 N.E.2d 784.[1] Since 1975, pursuant to R.C. 2743.02, the state waived its immunity from suit and consented to be sued and have its liability determined in the Court of Claims.

{¶ 36} In this case, appellants' action was dismissed in the Court of Claims and such ruling was never appealed. Rather, appellants went directly to the Erie County Court of Common Pleas to bring their action against the state. We find that appellants' causes of action were barred by the doctrine of sovereign immunity and that the court of common pleas was without jurisdiction to entertain appellants' causes of action.

---

1. In *Krause,* paragraphs one and three of the syllabus were overruled in part by *Schenkolewski.*

{¶ 37} Initially, we note that because appellants failed to appeal the judgment of the Court of Claims, they are held to that court's ruling, i.e., that appellants' cause of action accrued prior to the enactment of R.C. 2743.02.[2] As such, the doctrine of sovereign immunity would act to bar appellants' causes of action against the state unless appellants can establish that the state consented to being sued in the court of common pleas. Additionally, we find that the fact that the Court of Claims held that it did not have jurisdiction does not establish that appellants can maintain an action in the court of common pleas, absent consent by the state to being sued in that forum.

{¶ 38} Appellants rely on a number of cases to demonstrate that, prior to the enactment of R.C. 2743.02, the state consented to being sued in the court of common pleas. See, e.g., *Scot Lad Foods, Inc. v. Secretary of State* (1981), 66 Ohio St.2d 1, 20 O.O.3d 1, 418 N.E.2d 1368; *Smith v. Stempel* (1979), 65 Ohio App.2d 36, 19 O.O.3d 23, 414 N.E.2d 445; *Tschantz v. Ferguson* (1989), 49 Ohio App.3d 9, 550 N.E.2d 544; *Katko v. Balcerzak* (1987), 41 Ohio App.3d 375, 536 N.E.2d 10; *Williams v. Marion Rapid Transit* (1949), 152 Ohio St. 114, 39 O.O. 433, 87 N.E.2d 334; *Stidam v. Ashmore* (1959), 109 Ohio App. 431, 11 O.O.2d 383, 167 N.E.2d 106. *Scot Lad Foods, Stempel, Tschantz,* and *Katko* each dealt with suit against an officer or employee of the state, not the state itself. There is clearly no dispute that under certain circumstances, an action can be maintained in the court of common pleas against an employee or officer of the state. However, in *Scot Lad Foods*, the court, in fact, noted that had the state been the real party in interest, rather than the Secretary of State, the action would have been barred from being brought in the court of common pleas pursuant to the doctrine of sovereign immunity. This case does not involve an action against an individual employee or officer; rather, the state and one of its agencies is directly being sued. Accordingly, *Scot Lad Foods, Stempel, Tschantz,* and *Katko* do not establish that the state consented to suit in the court of common pleas in this case.

{¶ 39} Similarly, *Williams* and *Stidam* also were not actions against the state. Rather, they concerned the issue of whether an infant, who was not yet born at the time of the accident, could maintain a cause of action for his or her injuries. Additionally, cases concerning civil rights or declaratory judgment actions do not establish that the state consented to suit in negligence actions prior to the enactment of R.C. 2743.02. See, e.g., *Jackson v. Kurtz* (1979), 65 Ohio App.2d 152, 19 O.O.3d 105, 416 N.E.2d 1064; and *Burger Brewing Co. v.*

2. We note, however, that even if appellants were not bound by the Court of Claims' judgment, the court of common pleas still would not have jurisdiction because, based on *Treese, supra*, the action would belong in the Court of Claims, not the court of common pleas.

*Ohio Liquor Control Comm.* (1973), 34 Ohio St.2d 93, 63 O.O.2d 149, 296 N.E.2d 261.

{¶ 40} Appellants have offered no authority, and we have found none, to establish that the state consented to suit in the court of common pleas. Accordingly, appellants' action should have been dismissed on the basis that the court of common pleas lacked jurisdiction.

{¶ 41} We additionally note that appellants argued that the state changed its argument regarding jurisdiction mid-stream and that the state invited the error by the Court of Claims. This is not the case. First, "[i]t is well established that parties cannot confer jurisdiction over subject matter by consent or acquiescence." *Thorley v. Thorley* (1991), 77 Ohio App.3d 275, 277, 602 N.E.2d 268. "It is fundamental, however, that courts have only such jurisdiction as is conferred upon them by the Constitution or by the Legislature acting within its constitutional authority." *Humphrys v. Putnam* (1961), 172 Ohio St. 456, 460, 17 O.O.2d 424, 178 N.E.2d 506. Therefore, lack of subject-matter jurisdiction can be raised at any time and any judgment of a court lacking subject-matter jurisdiction is void *ab initio*. *Internatl. Lottery, Inc. v. Kerouac* (1995), 102 Ohio App.3d 660, 657 N.E.2d 820. Therefore, either the court of common pleas had jurisdiction over this matter or it did not. We find that the state did not consent to suit in the court of common pleas by challenging the Court of Claims' jurisdiction and is not barred from arguing that the court of common pleas did not have jurisdiction.

{¶ 42} Second, the state has not changed its position on jurisdiction. The state has always maintained that it was entitled to sovereign immunity and that appellants could not sue it in the court of common pleas. Rather, the only "change" occurred when the state correctly pointed out that *Treese*, which was decided after *Miller v. ODOT*, established that the Court of Claims should have retained jurisdiction over this matter. The state, in doing so, merely illustrated that had appellants appealed the decision in *Miller v. ODOT*, supra, the case would have stayed in the Court of Claims and appellants would not be in their current position, i.e., having no forum available to them.

{¶ 43} With respect to appellants' argument that it is entitled to redress in a meaningful time and in a meaningful manner, we note that none of the cases relied upon by appellants has anything to do with whether a state could be sued in tort in the court of common pleas. See, e.g., *Hyde v. Reynoldsville* (1994), 68 Ohio St.3d 240, 626 N.E.2d 75; *Burgess v. Eli Lilly & Co.* (1993), 66 Ohio St.3d 59, 609 N.E.2d 140; *Hardy v. VerMeulen* (1987), 32 Ohio St.3d 45, 512 N.E.2d 626. We therefore find appellants' argument in this regard to be without merit.

{¶ 44} Accordingly, we find that the court of common pleas was without jurisdiction to hear appellants' action against the state. The state's first assign-

ment of error is therefore found well taken. As such, the judgment of the trial court is void ab initio. See *Kerouac,* supra. We therefore find that it is unnecessary for us to consider the remainder of the state's assignments of error or appellants' assignments of error.

{¶ 45} On consideration whereof, having found that the trial court lacked jurisdiction, we find substantial justice has not been done. We therefore find the judgment of the Erie County Court of Common Pleas to be void ab initio and vacate its judgment in its entirety. Appellants are ordered to pay the costs of this appeal.

Judgment vacated.

MARK L. PIETRYKOWSKI, P.J., and MELVIN L. RESNICK, J., concur.

