NEUDECKER, Appellant,

v.

BUTLER COUNTY ENGINEER'S OFFICE et al., Appellees.

[Cite as *Neudecker v. Butler Cty. Engineer's Office,*
146 Ohio App.3d 614, 2001–Ohio–8663.]

Court of Appeals of Ohio,
Twelfth District, Butler County.

No. CA2000–07–147.

Decided Nov. 19, 2001.

Robert L. Swartz, for appellant.

Mark Landes and Jeffrey W. Stiltner, for appellees.

BROGAN, Judge.

{¶1} Scott Neudecker appeals from the judgment of the Butler County Common Pleas Court in favor of appellees, Butler County Engineer's Office and the Butler County Commissioners.

{¶2} This litigation arises out of Neudecker's fall into a culvert on Tylersville Road on August 8, 1998, at approximately 11:30 p.m., thereby breaking his ankle. On April 16, 1999, Neudecker sued the Butler County Engineer's Office and the Butler County Commissioners ("Butler County defendants"), alleging that the county created a nuisance by failing to warn about the steep incline of the culvert or failing to guard the culvert and remove weeds and grass growing alongside the culvert.

{¶3} On May 15, 2000, the Butler County defendants moved for summary judgment, arguing that the county was immune, as a matter of law, from Neudecker's negligence claim under R.C. Chapter 2744, and arguing that a political subdivision cannot be held liable for an alleged off-roadway nuisance that does not create a danger for ordinary traffic on the regularly traveled portion of the roadway.

{¶4} On June 30, 2000, the court issued its decision granting defendants' motion for summary judgment. Specifically, the trial court held "the area where Plaintiff fell cannot be said to be a nuisance as defined by the Supreme Court in *Manufacturer's Natl. Bank, infra,* and therefore, Defendants are immune from liability." Neudecker timely appealed the trial court's judgment.

{¶5} The facts are not essentially in dispute in this matter. On August 8, 1998, Neudecker, age eighteen, went to a friend's house for a party at approximately 9:00 p.m. After consuming four to five beers, Neudecker left his friend's house at 11:30 p.m. to walk to a Dairy Mart on Tylersville Road to get something to eat.

{¶6} Although Neudecker had never walked on Tylersville Road before the accident, he had driven the road many times and was familiar with the area where he fell. Tylersville Road is a heavily traveled road, and there were no sidewalks along the road where Neudecker walked. Neudecker remembers that the traffic was really heavy on the night of the accident and that there were no street lights nearby.

{¶7} Neudecker explained in his deposition that he walked along the side of Tylersville Road against the traffic. He testified that the only lights available to him were the car headlights of passing cars. Neudecker testified that as he approached the culvert in question he walked closer to the road. He testified that he knew that he would have to walk on the road to cross the culvert but an

approaching car required him to step back off the road onto a grassy area near the culvert. The area where he stepped was not solid ground as he believed but was part of an incline to the ravine covered with grass and weeds. He then fell into the ravine.

{¶8} Neudecker did not remember how many steps he took away from the road and does not recall how he stepped off the road or how he fell. As Neudecker stated in his deposition:

{¶9} "Q. Did you step back as soon as you saw it [the car] coming over the hill?

{¶10} "A. I can't remember if I stepped back or forward or how many steps, I just remember stepping off to the side to avoid the car.

{¶11} "* * *

{¶12} "Q. When you stepped off of the road just prior to falling, did you step sideways, did you step backward, what was your motion?

{¶13} "A. Sideways. I just remember stepping over. I don't remember exactly one feet, two feet, where I was going.

{¶14} "Q. So you don't recall—

{¶15} "A. I don't recall.

{¶16} "Q. —if you stepped back or stepped sideways or stepped forward.

{¶17} "A. I remember taking a step over and just—and thinking—I remember stepping over, looking, and thinking there was grass there.

{¶18} "Q. But do you recall actually looking down to where you were stepping, do you recall specifically doing that?

{¶19} "A. I can't remember."

{¶20} In opposition to the summary judgment motion, Neudecker provided the affidavit of Bruce Hickman, the owner of Mastermind Systems, Inc., which performs traffic safety studies for governmental agencies in Ohio and Indiana.

{¶21} Hickman stated that he was hired by the Butler County Engineer to study roadways in Butler County for hazards along the roadway. Hickman stated that he delivered his report to Butler County in October 1996, which included a listing of guardrail improvement/upgrades and roadway maintenance items on Butler County roads.

{¶22} Hickman stated that he informed Butler County in that report that the work needed at the culvert site where Neudecker was injured was "Redo culvert or install rail." Hickman stated that he went to the culvert site on October 24, 1999, and noticed that none of the work he had suggested at that site had been

performed. Hickman took photographs of the area and made the following observations:

{¶23} "12. Exhibit D, attached hereto, are photographs taken at the time of my re-examination of the area on or about October 24, 1999. These photographs depict the narrowing of the area beside the roadway in which a pedestrian would be required to walk on Tylersville Road when traversing in an easterly direction.

{¶24} "13. These photographs further show that the narrowing of the walkway area approaching the culvert is dangerously reduced to inches, whereas the area between the concrete ledge of the culvert and the roadway should be six (6) feet, especially if pedestrians are utilizing the right of way.

{¶25} "14. This area in question requires a pedestrian, who is walking in an easterly direction on Tylersville Road to observe oncoming traffic, to step off of the roadway asphalt just before the concrete curb of the culvert, onto what appears to be solid adjacent ground, in order to position himself in area of safety to avoid contact with oncoming vehicular traffic.

{¶26} "15. In my observation, this area gives the deception of being a flat, solid, grassy area of ground, when in fact it is a hidden, inclined slope that drops sharply to the culvert gully below. There is no solid foundation or support under the foliage.

{¶27} "16. It is my opinion, to a reasonable degree of professional certainty, that a pedestrian who stepped off the roadway in that area would fall immediately into the culvert gully.

{¶28} "17. The weeds, growth and surrounding foliage create a 'trap-like' area which conceals the dangerous inclined slope several feet before reaching the concrete embankment. This inclined area is not visible because of the surrounding foliage and there are no posted warnings.

{¶29} "18. It is my opinion, to a reasonable degree of professional certainty, that the culvert area does not meet minimum maintenance requirements, and that the area was improperly constructed and maintained with respect to the safety of pedestrians."

{¶30} Hickman also opined that there should have been a Type 3 object marker for that portion of the culvert in the direction in which Neudecker was walking. Hickman noted at paragraph 21 the following:

{¶31} "21. The responsibility for placing the Type 3 Object Markers is identified in Exhibit E, in pertinent part:

{¶32} "A. 3C–3 Object Adjacent to the Roadway

{¶33} "Objects not actually in the roadway may be so close to the edge of the road, that they need a marker. These include underpass peers, bridge abut-

ments, handrails and culvert headwalls. In some cases, there may not be a physical object involved, but other roadside conditions such as a narrow shoulder drop off, doors, small islands and abrupt changes in the roadway alignment *may make it undesirable for a driver to leave the roadway.*" (Emphasis added.)

{¶34} Hickman also stated there should have been a Clear Zone in the area where Neudecker fell. A "Clear Zone" refers to the desirable, unobstructed area along the roadway outside the edge of the road pavement that that would be available for the safe recovery of vehicles that have left the roadway. Hickman also opined that any slope located within the Clear Zone should not be steeper than 2 to 1 (two feet horizontally to every one foot decline vertically). Hickman noted that there was no clear zone in the area in question and the slope at the culvert's edge fell straight down to the gully below.

{¶35} Hickman opined that the grading of the ditch adjacent to the culvert was entirely too close to the road and entirely too steep for safety. He further opined that if Butler County had followed his recommendations, the site at which Neudecker fell would have been safer for pedestrians.

{¶36} Hickman noted that there is no area in which a pedestrian would be able to maneuver himself at the culvert without either stepping onto the roadway into traffic or off the roadway into the culvert. Hickman also opined that the simple and inexpensive addition of signage and clearance of weeds and foliage would have made the area in question safer for pedestrians. In short, he opined that Butler County Engineers failed to safely construct and maintain the questioned area and failed to warn pedestrians of the serious hazard.

{¶37} Neudecker argues in his sole assignment of error that the trial court erred in granting the defendants summary judgment.

{¶38} Specifically, Neudecker argues that the immunity exception found at R.C. 2744.02(B)(3) is applicable in this case. That section provides:

{¶39} "(3) [P]olitical subdivisions are liable for injury, death, or loss to persons or property caused by their failure to keep *public roads,* highways, streets, avenues, alleys, sidewalks, *bridges,* * * * or public grounds within the political subdivisions open, *in repair, and free from nuisance* * * *."

{¶40} Neudecker argues that the Butler County Engineer's Office failed to keep the public road and bridge in question free from nuisance, causing him injury.

{¶41} Neudecker argues that the trial court erred when it found that the area where he fell could not be considered a "nuisance" as defined by the Ohio Supreme Court in *Manufacturer's Natl. Bank of Detroit v. Erie City Rd. Comm.* (1992), 63 Ohio St.3d 318, 587 N.E.2d 819.

{¶42} In *Manufacturer's,* the Ohio Supreme Court held that a permanent obstruction to visibility, within the highway right-of-way, which renders the regularly traveled portions of the highway unsafe for the usual and ordinary course of travel, can be a "nuisance," for which a political subdivision may be liable under R.C. 2744.02(B)(3). In *Manufacturer's,* the nuisance alleged was corn growing within a township right-of-way that obstructed a driver's view of an intersection.

{¶43} In *Dickerhoof v. Canton* (1983), 6 Ohio St.3d 128, 6 OBR 186, 451 N.E.2d 1193, the Ohio Supreme Court held that a municipal corporation could be held liable under a similar statute, R.C. 723.01, for injuries resulting from its failure to keep the shoulder of the highway in repair and free from nuisance where such defect renders the highway unsafe for normal travel. In *Dickerhoof,* supra, the nuisance alleged was a chuckhole on the shoulder of the highway, which the plaintiff's decedent struck when he swerved to miss an object in the highway.

{¶44} In *Lovick v. Marion* (1975), 43 Ohio St.2d 171, 72 O.O.2d 95, 331 N.E.2d 445, the plaintiff was walking on the paved portion of a street because the street had no sidewalk. As plaintiff was walking, his foot slipped off the edge of the street and he fell down a gradually sloping, asphaltic concrete apron, which connected the edge of the street and a catch basin located about six feet from the edge of the pavement. Plaintiff slipped down the apron injuring his leg, knee, and hip. The Supreme Court held that liability is not imposed upon a political subdivision under R.C. 723.01 "to keep its streets open, in repair, and free from nuisance" where the condition in question does not render a street unsafe for usual and ordinary modes of travel. Id. at 172, 72 O.O.2d 95, 331 N.E.2d 445. In affirming the decision of the court of appeals holding that the municipality was not liable for plaintiff's injury, the court held that "the catch basin and drainage slope were not part of the paved or traveled portion of the street; they did not render the street unsafe for customary vehicular or pedestrian travel and did not cause injury to a person using the street in an expected and ordinary manner." Id. at 174, 72 O.O.2d 95, 331 N.E.2d 445.

{¶45} The court in *Lovick* noted that the catch basin and drainage slope were not part of the paved or traveled portion of the street, did not render the street unsafe for customary vehicular or pedestrian travel, and did not cause injury to a person using the street in an expected and ordinary manner. 43 Ohio St.2d at 174, 72 O.O.2d 95, 331 N.E.2d 445.

{¶46} In *Weber v. Condren* (Sept. 21, 1995), Cuyahoga App. No. 68268, 1995 WL 558899, plaintiff sued, among others, the city of Berea for the death of a thirteen-year-old boy who was struck by a car on Sheldon Road. The decedent was walking in tall uncut grass that was approximately two to three feet from the edge of the roadway. The trees and foliage in the area were "really overgrown."

As the decedent was walking he slipped and fell into the roadway, where he was struck by a vehicle. Plaintiff claimed that the city was liable under R.C. 2744.02(B)(3) for its failure to cut back the foliage on the side of the road. In analyzing the city's liability for a "nuisance" under R.C. Chapter 2744, the Cuyahoga County Court of Appeals noted that "the focus is on whether a permanent obstruction to visibility exists within the subdivision's control that 'creates a danger for ordinary traffic on the regularly traveled portion of the road.'" Id. at 6, citing *Manufacturer's Natl. Bank of Detroit v. Erie Cty. Rd. Comm.* (1992), 63 Ohio St.3d 318, 322, 587 N.E.2d 819.

{¶47} In holding that the city was entitled to summary judgment, the court held:

{¶48} "The foliage allegedly prevented Smith, the driver of the automobile which came into contact with decedent, from seeing the decedent on the side of the road. There is, however, no dispute that the foliage did not obstruct the roadway at all, just Smith's ability to see through the foliage to the right of the roadway. *The foliage, therefore, as a matter of law, did not create a danger for traffic on the road as it is the traffic on the road which is at the heart of the liability imposed by R.C. 2744.02(B)(3). While we are sensitive to the tragic loss of Weber's son, Weber nonetheless misconstrues the purpose behind R.C. 2744.02(B)(3) which is directed to traffic on the regularly travelled portion of the road.*" (Emphasis added.) Id. at 6.

{¶49} Thus, "R.C. 2744.02(B)(3) was not implicated under the facts of this case, and liability cannot be imposed upon the city thereunder." *Weber v. Condren* at 7.

{¶50} In *Stevens v. Ackman* (Dec. 20, 1999), Butler App. CA99–03–0053, 1999 WL 1255806, reversed, holding that R.C. 2744.02(C) is invalid, in *Stevens v. Ackman* (2001), 91 Ohio St.3d 182, 743 N.E.2d 901, this court held that the trial court properly granted the city of Middletown summary judgment on the basis of statutory immunity in a lawsuit where the claim was that the city failed to keep its road "free from nuisance" when it permitted the berm of the road to have edge drops from 3½″ to 7½″. We held that the edge drop is not analogous to a significant chuckhole or pothole on or adjacent to a roadway, nor does it constitute an obstruction to a driver's normal visibility within the right of way.

{¶51} The facts in the matter *sub judice* are remarkably similar to the facts in *Lovick v. Marion,* supra. The culvert was not part of the paved or traveled portion of Tylersville Road and the high grass around the culvert did not render Tylersville Road unsafe for customary vehicular or pedestrian travel and did not cause injury to a person using the street in an expected and ordinary manner.

The trial court properly granted summary judgment to the defendants. The assignment of error is overruled.

{¶52} The judgment of the trial court is affirmed.

Judgment affirmed.

WOLFF and GRADY, JJ., concur.

WILLIAM H. WOLFF, JR., JAMES A. BROGAN, and THOMAS J. GRADY, JJ., of the Second Appellate District, sitting by assignment.