MURRAY, Appellant,

v.

CHILLICOTHE et al., Appellees.

[Cite as *Murray v. Chillicothe,* 164 Ohio App.3d 294, 2005-Ohio-5864.]

Court of Appeals of Ohio,
Fourth District, Ross County.

No. 05CA2819.

Decided Nov. 1, 2005.

J. Jeffrey Benson, for appellant.

Keener, Doucher, Curley & Patterson, David T. Patterson and Steven G. Carlino, for appellee city of Chillicothe.

---

HARSHA, Judge.

{¶ 1} After he fell through a sewer grate located in the right-of-way for a city street, Michael Murray sued the landowner and the city of Chillicothe to recover for his injuries. When the court granted summary judgment to the city of Chillicothe on the basis that it is immune from liability, Murray appealed. Initially, Murray argues that the court erred in finding that this case involves the design of a storm-sewer system, which is a governmental function. He contends that his injury resulted from the city's failure to maintain the sewer, which is a proprietary function. However, we conclude that Murray's injury stems from an activity or responsibility that meets the per se definition of a governmental function. The city's actions also fall within the general definition of a governmental function provided by the political subdivision tort liability statute.

{¶ 2} Murray also argues that the court erred in finding that none of the limited exceptions to the statute's broad grant of immunity apply. First, he contends that R.C. 2744.02(B)(2), which creates liability for negligence in conducting proprietary functions, exposes the city to liability for his claims. However, because the trial court correctly characterized the city's conduct as a governmental function, the proprietary function exception to immunity does not apply. Next, he argues that R.C. 2744.02(B)(3), which creates an exception to immunity where the political subdivision fails to maintain its roadways or public access, applies. However, this exception is inapplicable, because the storm-sewer grate did not constitute a nuisance in the traveled portion of the road. Finally, he contends that R.C. 2744.02(B)(5), which imposes liability where an express statutory duty exists, creates liability in light of the duty imposed by R.C. 723.01 to regulate its streets and public grounds. We conclude that this section is inapplicable because liability for breach of a duty under R.C. 723.01 is also limited to nuisances in the traveled portion of the road. Because none of the limited exceptions to the statute's broad grant of immunity apply, we conclude that the trial court properly granted summary judgment to the city.

## I. BACKGROUND

{¶ 3} Mr. and Mrs. Elmon French live at the corner of Mead Drive and Belleview Avenue in Chillicothe, Ohio. In March 2003, the Frenches hired Michael Murray to perform some landscaping work, which included spreading mulch along a bank on the Belleview Avenue side of the property. Murray was carrying two bags of mulch to the work area when he stepped onto a catch-basin

storm-sewer grate. As he stepped onto the grate, his foot fell through it and his knee became lodged between the bars of the grate. The catch basin and grate are located within the city of Chillicothe's right-of-way along the Belleview Avenue side of the Frenches' property.

{¶ 4} Murray filed suit against the Frenches and the city, alleging that they negligently installed, maintained, and/or utilized the storm-sewer grate. He also alleged that the city failed to keep its public grounds open, in repair, and free from nuisance, as required by R.C. 723.01. The Frenches and the city both responded by filing an answer. After Murray dismissed his claim against the Frenches, the city filed a motion for summary judgment, arguing that it is immune from liability. To support its motion, the city provided Murray's deposition, in which he described the incident. It also provided the depositions of Donald Sherman, the city engineer, and James Tribby, an engineering aide.

{¶ 5} In his deposition, Tribby testified that he inspected the catch-basin grate after receiving notice of Murray's accident. He stated that the bars on the grate were one inch wide, with four-inch openings between them.[1] Tribby testified that when he asked around about the origins of the catch basin, he learned that a property owner in the 1940s or 1950s might have constructed it.

{¶ 6} In his deposition, Sherman testified that he reviewed the engineering department's records, which indicate that the city did not construct the catch basin. Likewise, there is no record of the city's issuing a permit for its construction. Nonetheless, Sherman acknowledged that the city is responsible for maintaining the catch basin, since it is in the city's right-of-way. He stated that the city does not conduct regular inspections of catch basins. Instead, service and repair of catch basins are "complaint-driven," i.e., the city sends out a crew upon receiving a report of a problem. Sherman testified that the city has not received a complaint about this particular catch basin during his time as city engineer.

{¶ 7} Sherman testified that the catch basin on the Frenches' property is of nonstandard construction. In addition, he testified that the catch-basin grate was not a standard grate. He stated that almost all grates are cast, but this grate was made of welded steel. He testified that the grate "was obviously a home-built grate." Finally, Sherman testified that the city follows the Ohio Depart-

---

1. There are two catch basins on the Frenches' property—one at the corner of Mead Drive and Belleview Avenue and one along Belleview Avenue. During Tribby's deposition, it became apparent that he had inspected only one of the catch basins, i.e., the one at the corner of Mead and Belleview. However, Murray's accident involved the catch basin along Belleview. Nonetheless, Sherman testified that he inspected the grates on both catch basins and that they were identical. Moreover, Murray does not dispute that the openings in the catch basin grate were four inches wide.

ment of Transportation's standards concerning the width of the openings for catch-basin grates. According to Sherman, the four-inch openings in this grate did not meet those standards. Sherman testified that the safety issue in this case involved the width of the grate's openings.

{¶ 8} In response to the city's motion, Murray provided the deposition of Donald Frey, a retired city employee, to show that the city had either actual or constructive knowledge of the grate's dangerous condition. Subsequently, the parties submitted supplemental briefs addressing whether the case involved a governmental or proprietary function.

{¶ 9} Ultimately, the trial court granted summary judgment to the city. The court concluded that the case involved the design of a sewer system, which is a governmental function. It noted that a political subdivision such as the city is immune from liability for governmental functions unless one of the exceptions in R.C. 2744.02(B) applies. Because the court found that none of the exceptions applied, it concluded that the city is immune from liability. Additionally, the court found that the catch-basin grate was not a nuisance and, thus, the city did not violate any duty under R.C. 723.01.

## II. ASSIGNMENT OF ERROR

{¶ 10} Murray appeals the trial court's judgment and raises the following assignment of error:

The trial court erred by holding that the appellee is immune from liability pursuant to the provisions of R.C. 2744.01, et seq.

### A. Standard of Review

{¶ 11} Immunity from suit presents a question of law that is properly determined by summary judgment. *Conley v. Shearer* (1992), 64 Ohio St.3d 284, 292, 595 N.E.2d 862. When reviewing a summary judgment, the lower court and appellate court utilize the same standard, i.e., we review the judgment independently and without deference to the trial court's determinations. *Midwest Specialties, Inc. v. Firestone Tire & Rubber Co.* (1988), 42 Ohio App.3d 6, 8, 536 N.E.2d 411. Summary judgment is appropriate when the following have been established: (1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence construed most strongly in its favor. *Bostic v. Connor* (1988), 37 Ohio St.3d 144, 146, 524 N.E.2d 881, citing *Harless v. Willis Day Warehousing Co.* (1978), 54 Ohio St.2d 64, 66, 8 O.O.3d 73, 375 N.E.2d 46. See, also, Civ.R. 56(C). The burden of showing that no genuine issue of material fact exists falls upon the

moving party. *Mitseff v. Wheeler* (1988), 38 Ohio St.3d 112, 115, 526 N.E.2d 798. If the moving party satisfies this burden, "the nonmoving party then has a reciprocal burden outlined in Civ.R. 56(E) to set forth specific facts showing that there is a genuine issue for trial and, if the nonmovant does not so respond, summary judgment, if appropriate, shall be entered against the nonmoving party." *Kulch v. Structural Fibers, Inc.* (1997), 78 Ohio St.3d 134, 145, 677 N.E.2d 308, citing *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 295, 662 N.E.2d 264.

## III. STATUTORY IMMUNITY

{¶ 12} Political subdivisions are generally not liable in damages for injury, death, or loss caused by any act or omission in connection with a governmental function or proprietary function. R.C. 2744.02(A)(1). However, there are limited exceptions to this broad general grant of immunity. Specifically, R.C. 2744.02(B) provided:

Subject to sections 2744.03 and 2744.05 of the Revised Code, a political subdivision is liable in damages in a civil action for injury, death, or loss to persons or property allegedly caused by an act or omission of the political subdivision or of any of its employees in connection with a governmental or proprietary function, as follows:

(1) Except as otherwise provided in this division, political subdivisions are liable for injury, death, or loss to persons or property caused by the negligent operation of any motor vehicle by their employees upon the public roads, highways, or streets when the employees are engaged within the scope of their employment and authority. The following are full defenses to such liability:
* * *

(2) Except as otherwise provided in section 3746.24 of the Revised Code, political subdivisions are liable for injury, death, or loss to persons or property caused by the negligent performance of acts by their employees with respect to proprietary functions of the political subdivisions.

(3) Except as otherwise provided in section 3746.24 of the Revised Code, political subdivisions are liable for injury, death, or loss to persons or property caused by their failure to keep public roads, highways, streets, avenues, alleys, sidewalks, bridges, aqueducts, viaducts, or public grounds within the political subdivisions open, in repair, and free from nuisance
* * *.

(4) Except as otherwise provided in section 3746.24 of the Revised Code, political subdivisions are liable for injury, death, or loss to persons or property that is caused by the negligence of their employees and that occurs within or on the grounds of buildings that are used in connection with the performance of a governmental function

\* \* \*.

(5) In addition to the circumstances described in divisions (B)(1) to (4) of this section, a political subdivision is liable for injury, death, or loss to persons or property when liability is expressly imposed upon the political subdivision by a section of the Revised Code \* \* \*. Liability shall not be construed to exist under another section of the Revised Code merely because a responsibility is imposed upon a political subdivision or because of a general authorization that a political subdivision may sue and be sued.

■ {¶ 13} Thus, R.C. Chapter 2744[2] establishes a three-tier analysis for determining whether a political subdivision is immune from liability. *Cater v. Cleveland* (1998), 83 Ohio St.3d 24, 28, 697 N.E.2d 610. First, R.C. 2744.02(A)(1) sets forth the general rule that a political subdivision is immune from tort liability for acts or omissions connected with governmental or proprietary functions. See *Colbert v. Cleveland,* 99 Ohio St.3d 215, 216, 2003-Ohio-3319, 790 N.E.2d 781; *Harp v. Cleveland Hts.* (2000), 87 Ohio St.3d 506, 509, 721 N.E.2d 1020. Second, R.C. 2744.02(B) lists five exceptions to the general immunity granted to political subdivisions under R.C. 2744.02(A)(1). See *Ryll v. Columbus Fireworks Display Co.*, 95 Ohio St.3d 467, 470, 2002-Ohio-2584, 769 N.E.2d 372. Finally, R.C. 2744.03(A) makes available several defenses that a political subdivision may assert if it is potentially subject to liability under R.C. 2744.02(B). See *Colbert.*

## A.   Proprietary versus Governmental Functions

■ {¶ 14} In light of the broad general grant of immunity provided in R.C. 2744.02(A), Murray must establish a statutory exception from immunity in order to prevail. He focuses initially upon R.C. 2744.02(B)(2), which provides for liability for injuries caused by the negligent performance of a proprietary function. Thus, we begin our analysis by determining whether this case involves a governmental function or a proprietary one.

{¶ 15} R.C. 2744.01(C)(1) provides a generic description of governmental functions. In addition to this general definition, the statute also provides a nonexclusive list of items that are deemed governmental functions per se. See R.C. 2744.01(C)(2). Included in that list is the "provision or nonprovision, planning or design, construction, or reconstruction of a public improvement,

---

**2.** The General Assembly has amended R.C. Chapter 2744 several times since the incident at issue here. For purposes of this appeal, we apply the version in effect in March 2003. See *Hubbard v. Canton City School Bd. of Edn.*, 97 Ohio St.3d 451, 454, 2002-Ohio-6718, 780 N.E.2d 543. This requires us to apply the version of the statute in effect prior to the enactment of 1996 Am.Sub.H.B. No. 350. See *State ex rel. Ohio Academy of Trial Lawyers v. Sheward* (1999), 86 Ohio St.3d 451, 715 N.E.2d 1062, and *Stevens v. Ackman* (2001), 91 Ohio St.3d 182, 743 N.E.2d 901.

including, but not limited to, a sewer system." R.C. 2744.01(C)(2)(*l*). Likewise, R.C. 2744.01(G)(1) provides a general definition of a proprietary function. Like its companion, the proprietary function subsection also contains a list of actions that are specified as falling within its definition per se. Included in that list is the "maintenance, destruction, operation, and upkeep of a sewer system." R.C. 2744.02(G)(2)(d).

{¶ 16} Murray argues that his injury occurred because of the city's failure to maintain the storm-sewer grate. The city disagrees, arguing that the injury stems from the design of the storm-sewer grate. It contends that Murray's injury occurred because of the width of the grate's openings, which is "simply a matter of the design of the grate."

■ {¶ 17} Webster's Dictionary defines "maintenance" as the "act of maintaining or state of being maintained." Webster's New College Dictionary (1999) 660. It defines "maintain" as "To preserve or keep in a given existing condition, as of efficiency or good repair." Id. The deposition testimony presented indicates that the accident in this case occurred because the openings in the storm sewer grate were too wide. There is no evidence that the four-inch openings existed because the grate was in a state of disrepair. Rather, the evidence indicates that the grate was designed with four-inch openings. Because Murray's injury did not result from the catch-basin grate's being in a state of disrepair, we cannot say that this case involves the maintenance of a storm-sewer system. In most instances, the government's duty to maintain a structure does not include the duty to upgrade it to current construction standards. See *Treese v. Delaware* (1994), 95 Ohio App.3d 536, 543, 642 N.E.2d 1147, stating in the context of highways that maintenance involves only the preservation of existing facilities, and not the initiation of substantial improvements (but leaving unanswered the issue of whether maintenance may include upgrading where a nuisance condition has arisen). See, also, *Thomas v. Cuyahoga Cty. Bd. of Commrs.*, Sept. 30, 1993, Cuyahoga County Court of Appeals Case No. 62949, 1993 WL 389781, stating that the board had no duty to upgrade a highway median barrier as technology developed.

{¶ 18} Thus, we agree with the trial court's legal conclusion that Murray's injury resulted from a design flaw rather than from improper maintenance. Because the design of a sewer system is designated by the statute as a governmental function per se, no liability can attach to the city under the proprietary-function exception to the statute's general grant of immunity. The fact that the city inherited or assumed responsibility for a private sewer system with a design flaw does not convert that design flaw into a maintenance responsibility.

## B. Public Roads and Grounds

{¶ 19} Murray also argues that the city is liable under the exception set forth in R.C. 2744.02(B)(3), which imposes liability upon a political subdivision for its failure to keep public roads free from nuisance.[3] He argues that keeping the road free from nuisance requires the city "to maintain/correct conditions in close proximity to the paved roadway (including the road right of way) that create an imminent danger to others."

{¶ 20} In determining a political subdivision's duty under R.C. 2744.02(B), the proper focus is on "whether a condition exists within the political subdivision's control that creates a danger for ordinary traffic on the regularly travelled portion of the road." *Haynes v. Franklin*, 95 Ohio St.3d 344, 2002-Ohio-2334, 767 N.E.2d 1146, at ¶ 12, quoting *Manufacturer's Natl. Bank of Detroit v. Erie Cty. Road Comm.* (1992), 63 Ohio St.3d 318, 322, 587 N.E.2d 819. Under this standard, the political subdivision's duty is not limited to physical conditions in the roadway itself. Rather, the duty also "extends to conditions in the right-of-way that directly affect the [road's] safety for the regular and ordinary course of traffic." *Manufacturer's Natl. Bank*, 63 Ohio St.3d at 321–22, 587 N.E.2d 819.

{¶ 21} The city submitted an affidavit from Tribby along with its summary-judgment motion. Attached to the affidavit is a diagram of the catch basin, which indicates that the catch basin is located about six feet from the edge of the pavement. Moreover, the deposition testimony establishes that the catch basin is located in a drainage ditch. The diagram indicates that the difference in elevation between the edge of the pavement and the center of the catch-basin grate is about five inches. According to Sherman, the catch-basin grate is "not in an area that typically sees foot traffic."

{¶ 22} The city's evidence shows that the catch-basin grate did not create a danger for ordinary traffic on the regularly traveled portion of the road. See *Manufacturer's Natl. Bank*, 63 Ohio St.3d at 322, 587 N.E.2d 819. There is no reason to think that the grate would adversely affect vehicular and pedestrian traffic on the regularly traveled portion of the road. Thus, we conclude that the city satisfied its burden of showing that there is no genuine issue as to whether the catch basin grate constituted a nuisance under R.C. 2744.02(B)(3). The burden then fell on Murray to set forth specific facts showing that the grate was such a nuisance. See *Kulch*, 78 Ohio St.3d at 145, 677 N.E.2d 308. Unfortunate-

---

3. Murray actually relies on the current version of the statute, which imposes liability for a political subdivision's negligent failure to keep public roads in repair and other negligent failure to remove obstructions from public roads. See R.C. 2744.02(B)(3). However, as previously noted, we must apply the version of the statute in effect at the time of Murray's accident. Therefore, we have construed Murray's argument under the appropriate version of the statute.

ly, Murray cannot satisfy this burden. In responding to the city's motion, Murray did not provide any evidence to show that the catch-basin grate created a danger for ordinary traffic on the regularly traveled portion of the road. Accordingly, reasonable minds could conclude only that the catch-basin grate was not a nuisance under the statute.

{¶ 23} *Lovick v. Marion* (1975), 43 Ohio St.2d 171, 72 O.O.2d 95, 331 N.E.2d 445, bolsters this conclusion. There, the Supreme Court of Ohio considered whether a catch basin and drainage slope constituted a nuisance for purposes of R.C. 723.01. At the time, R.C. 723.01 stated: "Municipal corporations shall have special power to regulate the use of the streets. The legislative authority of such municipal corporation shall have the care, supervision, and control of * * * streets * * * within the municipal corporation and shall cause them to be kept open, in repair, and free from nuisance." 1953 H.B. No. 1.

{¶ 24} The plaintiff in *Lovick* was walking on the paved portion of the street, because there was no sidewalk. As the plaintiff was walking, his foot slipped off the edge of the street and he fell down a gradually sloping concrete apron, which connected the edge of the street and a catch basin located about six feet from the edge of the pavement. Although the top of the catch basin was covered, there were no guards over the opening that faced the apron. When the plaintiff fell, his leg entered the opening, and his leg, knee, and hip were injured. The plaintiff subsequently filed suit against the city of Marion. The Supreme Court of Ohio concluded that the catch basin and drainage slope did not constitute a nuisance, stating: "[T]he catch basin and drainage slope were not part of the paved or traveled portion of the street; they did not render the street unsafe for customary vehicular or pedestrian travel and did not cause injury to a person using the street in an expected and ordinary manner." *Lovick*, 43 Ohio St.2d at 174, 72 O.O.2d 95, 331 N.E.2d 445.

{¶ 25} Although *Lovick* involved a municipal corporation's duty under R.C. 723.01, Ohio courts have often looked to cases interpreting R.C. 723.01 when deciding cases under R.C. 2744.02(B)(3). See, e.g., *Manufacturer's Natl. Bank*, 63 Ohio St.3d 318, 587 N.E.2d 819; *Neudecker v. Butler Cty. Engineer's Office* (2001), 146 Ohio App.3d 614, 767 N.E.2d 776; *Harris v. Ohio Dept. of Transp.* (1992), 83 Ohio App.3d 125, 614 N.E.2d 779. The relevant facts in *Lovick* and this case are similar in that both cases involve a catch basin located six feet from the edge of the road. Furthermore, both cases involve a catch basin located below road level. The Ohio Supreme Court concluded that the catch basin and drainage slope in *Lovick* "did not render the street unsafe for customary vehicular or pedestrian travel and did not cause injury to a person using the street in an expected and ordinary manner." *Lovick*, 43 Ohio St.2d at 174, 72 O.O.2d 95, 331 N.E.2d 445. We find the same to be true here. Because there is

no evidence that the catch-basin grate created a danger for ordinary traffic on the regularly traveled portion of the road, we conclude that the exception to immunity found in R.C. 2744.02(B)(3) is not applicable.

{¶ 26} Finally, Murray argues that the city is liable under the exception in R.C. 2744.02(B)(5), which provides that a political subdivision "is liable for injury, death, or loss to persons or property when liability is expressly imposed upon the political subdivision by a section of the Revised Code." He argues that R.C. 723.01 imposes liability on the city for its failure to remedy an unsafe condition of which it had either actual or constructive notice. At the time of the accident, R.C. 723.01 provided: "Municipal corporations shall have special power to regulate the use of the streets. * * * [T]he legislative authority of a municipal corporation shall have the care, supervision, and control of the public highways, streets, avenues, alleys, sidewalks, public grounds, bridges, aqueducts, and viaducts within the municipal corporation, and the municipal corporation shall cause them to be kept open, in repair, and free from nuisance." [4]

{¶ 27} As can be seen from the preceding analysis of the city's duty to keep its roadways free from nuisance, R.C. 723.01 is limited to conditions that affect the traveled portions of the roadway. See *Lovick,* supra, 43 Ohio St.2d 171, 72 O.O.2d 95, 331 N.E.2d 445.

{¶ 28} To the extent that Murray relies on the "public grounds" language of R.C. 723.01, we remain unpersuaded. Giving the term "public grounds" its broadest meaning could result in finding that any ground owned by the government would fall within the statute. However, we conclude that the statute contemplates only those grounds that are open to the public for regular travel. See *Marshall v. Portsmouth* (1967), 11 Ohio Misc. 123, 124, 40 O.O.2d 415, 229 N.E.2d 665. All of the other terms in the statute relate to areas in which the public may walk, ride, or travel, e.g., alleys, streets, sidewalks, etc. These are areas designed for public travel. Sewer rights-of-way are not. The duties imposed by the statute relate to keeping public ways of travel in repair in order to accommodate their designated use. It makes no sense to impose such a duty upon a city right-of-way that is not intended for general public access.

{¶ 29} Because none of the exceptions in R.C. 2744.02(B) apply to the facts of this case, we conclude that the court acted properly in declaring the city immune

---

4. As with R.C. Chapter 2744, we must apply the version of R.C. 723.01 in effect at the time of the accident. This requires us to apply the version in effect prior to the enactment of 1996 Am.Sub.H.B. No. 350. See *Sheward,* 86 Ohio St.3d 451, 715 N.E.2d 1062.

from liability. Accordingly, we overrule Murray's assignment of error and affirm the trial court's judgment.

Judgment affirmed.

ABELE, P.J., and KLINE, J., concur.