[Cite as *Ivory v. Austintown Twp.*, 2011-Ohio-3171.]

STATE OF OHIO, MAHONING COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| JOSEPH IVORY, | ) | |
| | ) | CASE NO. 10 MA 106 |
| PLAINTIFF-APPELLANT, | ) | |
| | ) | |
| - VS - | ) | OPINION |
| | ) | |
| TOWNSHIP OF AUSTINTOWN OHIO, | ) | |
| et al., | ) | |
| | ) | |
| DEFENDANTS-APPELLEE. | ) | |

CHARACTER OF PROCEEDINGS:  Civil Appeal from Common Pleas
Court, Case No. 08 CV 2515.

JUDGMENT:  Affirmed.

APPEARANCES:
For Plaintiff-Appellant:  Attorney Peter C. Klimis
Attorney James E. Lanzo
4126 Youngstown-Poland Road
Youngstown, OH 44514

For Defendants-Appellee:  Attorney James F. Mathews
Baker, Dublikar, Beck, Wiley
& Mathews
400 South Main Street
Canton, OH 44720

JUDGES:
Hon. Mary DeGenaro
Hon. Gene Donofrio
Hon. Joseph J. Vukovich

Dated: June 15, 2011

DeGenaro, J.

{¶1}   Plaintiff-Appellant, Joseph Ivory appeals the June 14, 2010 decision of the Mahoning County Court of Common Pleas granting Defendant-Appellee, Township of Austintown's motion for summary judgment.  Ivory argues that the trial court incorrectly found Austintown was immune from liability under R.C. 2744, the Political Subdivision Tort Liability Act.

{¶2}   Upon review, Ivory's assignment of error is meritless.  Austintown is entitled to immunity under R.C. 2744.02(B)(1), because it was engaged in a governmental function, as defined by R.C. 2744.01(C)(2)(l), when it installed a new sewer abutting Ivory's property, and thus none of the exceptions to immunity codified in R.C. 2744.02(B)(2) apply.  Accordingly, the decision of the trial court is affirmed.

## Facts and Procedural History

{¶3}   Ivory owns a single-story house in Austintown, Ohio with a basement level garage and living space.

{¶4}   On June 24, 2006, Austintown experienced "heavy rains."  Ivory testified that surface water came rushing down the road onto his driveway, into his garage and basement, and that three feet of water went through his property.  According to Ivory, an open drainage ditch had abutted his property.  Two weeks prior to the storm, Austintown replaced it with a pipe and catch basin, which Ivory claims was unable to collect all the storm water and caused his home to flood.

{¶5}   Ivory filed suit alleging Austintown negligently maintained its sewers when it covered the drainage ditch and installed the pipe and catch basin.  Following discovery, Austintown moved for summary judgment, asserting it was immune from liability, which the trial court granted, finding Austintown was immune under R.C. 2744.02(A)(1) and that none of the exceptions to immunity codified in R.C. 2744.02(B) applied.

## Governmental Immunity on Summary Judgment

{¶6}   In his sole assignment of error Ivory asserts:

{¶7}   "The trial court erred when it sustained Appellee's motion for summary

judgment."

{¶8} Ivory asserts Austintown, a political subdivision generally protected from liability under R.C. 2744.02(A), does not have immunity in this case under two exceptions codified in R.C. 2744.02(B)(2) & (B)(3). First, it negligently performed a proprietary function, and second, it negligently maintained public roads. Austintown counters, arguing its immunity remains intact because the township was engaged in a governmental function and the case does not involve the maintenance of public roads.

{¶9} When reviewing a trial court's decision to grant summary judgment, an appellate court applies the same standard used by the trial court and, therefore, engages in a de novo review. *Parenti v. Goodyear Tire & Rubber Co.* (1990), 66 Ohio App.3d 826, 829, 586 N.E.2d 1121. A motion for summary judgment is proper if the court, upon viewing the evidence in a light most favorable to the non-moving party, determines that: (1) there are no genuine issues as to any material facts; (2) the movant is entitled to a judgment as a matter of law; and (3) the evidence is such that reasonable minds can come to but one conclusion and that conclusion is adverse to the opposing party. Civ.R. 56(C); *Byrd v. Smith* (2006), 110 Ohio St. 3d 24, 2006-Ohio-3455, 850 N.E.2d 47, at ¶10. Further, "the moving party bears the initial responsibility of informing the trial court of the basis for the motion, and identifying those portions of the record which demonstrate the absence of a genuine issue of fact on a material element of the nonmoving party's claim." *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 296, 662 N.E.2d 264. The nonmoving party has the reciprocal burden of specificity and cannot rest on the mere allegations or denials in the pleadings. Id. at 293.

{¶10} "The determination as to whether a political subdivision is immune from suit is purely a question of law properly determined by a court prior to trial and preferably on a motion for summary judgment." *Schaffer v. Board of Cty. Comrs. of Carroll Cty.* (Dec. 7, 1998), 7th Dist. No. 672, at *4 (citations omitted).

{¶11} In *Cater v. City of Cleveland* (1998), 83 Ohio St.3d 24, 697 N.E.2d 610, the Ohio Supreme Court set forth a three-tiered analysis for determining whether a political subdivision is immune from liability. First, R.C. 2744.02(A)(1) is a broad grant of immunity to political subdivisions for "injury, death, or loss to persons or property allegedly caused

by any act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function." Once immunity is established the second tier of analysis requires the Court to determine whether any of the five enumerated exceptions in R.C. 2744.02(B)(1)-(5) apply. Id. at 28. If one of the five exceptions to immunity applies then the political subdivision is not entitled to immunity. Id. Under the third tier of analysis, the court reinstates immunity if the political subdivision can successfully argue that one of the defenses contained in R.C. 2744.03 applies. Id.

{¶12} Both parties correctly agree that Austintown is a political subdivision entitled to the broad grant of immunity under R.C. 2744.02(A)(1). At issue is whether either the exception for the negligent performance of a proprietary function or the negligent failure to maintain public roads applies. R.C. 2744.02(B)(2) or (3).

### Proprietary Function - R.C. 2744.02(B)(2)

{¶13} Under R.C. 2744.02(B)(2) "political subdivisions are liable for injury, death, or loss to person or property caused by the negligent performance of acts by their employees with respect to proprietary functions of the political subdivisions." This exception to immunity necessitates first determining whether the political subdivision was engaged in a proprietary or governmental function.

{¶14} When a political subdivision works on its sewers it can be engaged in either a governmental or proprietary function, depending on the nature of the work. "Functions which can be categorized as either governmental or proprietary are listed in the definitional section of the statute, R.C. 2744.01" and aid the court in determining what kind of action the political subdivision was engaged in and whether it is entitled to immunity. *Spitzer v. Mid Continent Constr. Co.*, 8th Dist. No. 89177, 2007-Ohio-6067, at ¶18 (quoting, *Franks v. Sandusky Bd. of Trustees* (Mar. 31, 1992), 6th Dist. No. S-91-18). Governmental functions include "the provision or nonprovision, planning or design, construction, or reconstruction of a public improvement, including, but not limited to, a sewer system." R.C. 2744.01(C)(2)(l). Proprietary functions include "the maintenance, destruction, operation, and upkeep of a sewer system." R.C. 2744.01(G)(1)(D). Given the overlapping nature of these definitions, "[d]etermining whether an allegation of negligence relates to the maintenance, operation, or upkeep of a sewer system or, instead, the

design, construction, or reconstruction of a sewer system is not always a simple inquiry." *Essman v. Portsmouth*, 4th Dist. No. 09CA3325, 2010-Ohio-4837 at ¶32.

{¶15} In *Essman*, property owners alleged the city negligently maintained its sewers when the sewer system repeatedly backed up, flooding their homes with raw sewage. Portsmouth asserted immunity under R.C. 2744.02(A)(1) or 2744.03(A)(5) while the homeowners asserted the city was liable under R.C. 2744.02(B)(2). The Court synthesized the various cases concerning sewers and the application of R.C. 2744.02(B)(2) and set out general guidelines for determining whether a town's actions are governmental or proprietary. The Court found that a proprietary function was involved when: (1) "remedying the sewer problem would involve little discretion but, instead, would be a matter of routine maintenance, inspection, repair, removal of obstructions, or general repair of deterioration;" or (2) a city or municipality decided to tap sewer lines into an existing sewer system. Id. at ¶32 (citations omitted). The Court found a governmental function was involved when: (1) "remedying a problem would require a city to, in essence, redesign or reconstruct the sewer system;" or (2) "a sewer system operates as it was designed." Id. at ¶32-33 (citations omitted). Based on this analysis the Fourth District held that Portsmouth could be subject to liability under 2744.02(B)(2) for negligently operating its wet gates but ultimately reinstated immunity under R.C. 2744.03(A)(5), which extends to activities that involve weighing alternatives or making decisions requiring a high degree of official judgment or discretion.

{¶16} The determination of whether Austintown's actions were proprietary or governmental is more difficult because the record does not contain any information concerning the construction, design, or maintenance of the sewer in question. Both parties agree on the essential facts. Prior to the June 2006 storm Austintown covered a sewer drainage ditch abutting Ivory's property and installed a pipe and catch basin. But neither party has presented any testimony indicating why the pipe and catch basin were installed or whether it operated correctly during the storm. Instead, Ivory merely asserts its construction constituted maintenance while Austintown asserts that the pipe and catch drain was a new sewer design and construction. Austintown also points to Ivory's deposition testimony:

{¶17} "Q. Essentially your claim is that by eliminating the ditch and installing just the one catch basin as well as the piping in the enclosed ditch, that that design or configuration that the township put in simply did not have the capacity to handle the rain during this June 24 event?

{¶18} "A. Uh-huh."

{¶19} The legal question is whether the installation of the pipe and catch basin constituted maintenance of a sewer, a proprietary function, or the provision, design or construction of a sewer, a governmental function. Integral to Ivory's claim is the assertion that the old drainage ditch was a sufficient sewer system while the new pipe and catch drain is not. This is a tacit admission that the flooding problem can only be remedied by the removal or redesign of the pipe and catch basin. Viewing the evidence in a light most favorable to Ivory, when Austintown covered the drainage ditch and installed the pipe and catch basin, it had provided/redesigned/constructed a new sewer, not maintained it. Because sewer design and construction is a governmental, not proprietary, function, R.C. 2744.02(B)(2) does not apply and Austintown's immunity remains intact. See also R.C. 2744.01(C)(2)(r) (flood control measures are governmental functions.)

## Maintain Public Roads - R.C. 2744.02(B)(3)

{¶20} Under R.C. 2744.02(B)(3) "political subdivisions are liable for injury, death, or loss to person or property caused by their negligent failure to keep public roads in repair and other negligent failure to remove obstructions from public roads." R.C. 2744.01(H) defines "public road" as: "public roads, highways, streets, avenues, alleys and bridges within a political subdivision. 'Public roads' does not include berms, shoulders, rights-of-way, or traffic control devices unless the traffic control devices are mandated by the Ohio manual of uniform traffic control devices." The purpose behind 2744.02(B)(3) is to ensure the safety of the public on roads and it is generally applicable only when a condition causes the road to become unsafe for travel. See *Ross v. Board of Educ. of Solon City School Dist.* (July 2, 1992), 8th Dist. Nos. 62978, 63020 at 3 (construing a previous version of 2744.02(B)(3)).

{¶21} Ivory asserts this exception applies because "drainage ditch[es] and catch basins * * * are used to prevent water from accumulating on the roadway." But

2744.03(B)(3) is a narrow exception which applies to traveled portions of the street and which explicitly does not contemplate shoulders or berms as part of "public roads." See *Wooten v. CSX RR.* (2005), 164 Ohio App.3d 428, 443, 842 N.E.2d 603 at ¶50 ("the focus should be on whether a condition exists within the political subdivision's control that creates a danger for ordinary traffic on the regularly travelled [sic] portion of the road.") The Twelfth District, analyzing R.C. 2744.03(B)(3)'s applicability where a pedestrian tripped and fell in a culvert, noted the Supreme Court, when construing R.C. 723.01, found that a "catch basin and drainage slope were not part of the paved or traveled portion of the street, did not render the street unsafe for customary vehicular or pedestrian travel, and did not cause injury to a person using the street in an expected and ordinary manner." *Neudecker v. Butler Cty. Engineer's Office* (2001), 146 Ohio App.3d 614, 619, 767 N.E.2d 776 (quoting *Lovick v. Marion* (1975), 43 Ohio St.2d 171, 174 331 N.E.2d 445). The Twelfth District held that the public road exception to immunity did not apply to a culvert. Id.

**{¶22}** Because the catch basin and pipe in question is not a part of the paved or traveled portion of the street, it is not a public road as defined in R.C. 2744.01(H) and the exception contained in R.C. 2744.02(B)(3) simply does not apply. Given the narrow scope of the exception in 2744.02(B)(3), Austintown's immunity under 2744.02(A)(1) remains intact.

**{¶23}** In conclusion, neither of the exceptions in R.C. 2744.02(B)(2) or (3) apply, and Austintown's immunity remains intact. Accordingly, Ivory's sole assignment of error is meritless, and the judgment of the trial court is affirmed.

Donofrio, J., concurs.

Vukovich, J., concurs.