[Cite as *Risner v. Ohio Dept. of Transp.*, 2013-Ohio-5698.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Paul Risner as Co-Administrator of the Estate of Amber Risner, a Deceased Minor et al., | : | |
| | : | |
| Plaintiffs-Appellants, | : | No. 12AP-828 |
| | | (Ct. of Cl. No. 2011-03332) |
| v. | : | |
| | | (REGULAR CALENDAR) |
| Ohio Department of Transportation et al., | : | |
| | : | |
| Defendants-Appellees. | : | |

D E C I S I O N

Rendered on December 24, 2013

*Blue + Blue, LLC*, and *Douglas J. Blue*, for appellants.

*Michael DeWine*, Attorney General, *William C. Becker*, and *Amy S. Brown*, for appellee Ohio Department of Transportation.

APPEAL from the Court of Claims of Ohio.

BROWN, J.

{¶ 1} Paul and Catherine Risner, plaintiffs-appellants, appeal from the judgment of the Court of Claims of Ohio, in which the court granted the motion for summary judgment filed by the Ohio Department of Transportation ("ODOT"), defendant-appellee.

{¶ 2} On September 12, 2009, around midnight, Amber Risner ("Amber"), the daughter of appellants, was traveling as a front-seat passenger in a vehicle driven by Ashley Royster on northbound State Route 220 ("SR 220"). Kayla Thompson was a rear-seat passenger in the vehicle. Royster's vehicle stopped at a stop sign at the intersection of SR 220 and State Route 32 ("SR 32"), a four-lane, divided highway. The intersection was

newly constructed in the mid-1990s when SR 32 was upgraded from two lanes to four. A flashing red light facing northbound SR 220 is also above the intersection. After seeing no cars, she proceeded to cross the intersection. The intersection contains a median between the eastbound and westbound lanes of SR 32, and a flashing yellow light faces eastbound and westbound SR 32 traffic. There are also advance warning signs on eastbound and westbound SR 32 prior to the intersection with SR 220. The overhead flashing red and yellow lights and advance warning signs were added to SR 220 and 32 in 2000 and 2004. Royster's vehicle proceeded into the intersection without stopping in the median and was struck by a vehicle being driven by Robert Boring, who was traveling westbound on SR 32. Amber was killed in the collision.

{¶ 3}   On March 4, 2011, appellants filed a complaint in the Court of Claims against ODOT, asserting claims for wrongful death and survivorship based upon ODOT's negligent design and maintenance of the intersection at SR 220 and 32. Appellants claimed that ODOT was negligent with respect to the lack of sight distance available to motorists approaching the intersection from northbound SR 220, as well as the use of overhead red and yellow flashing lights at the intersection instead of a four-way stop-and-go traffic light.

{¶ 4}   On March 2, 2012, ODOT filed a motion for summary judgment. ODOT claimed that it constructed the intersection in accordance with design standards in place at the time of construction and had no duty to later upgrade the intersection, it was immune from liability for the discretionary decisions it made with regard to the placement of traffic signals at the intersection, and the driver's negligence was the sole and proximate cause of Amber's death. On May 8, 2012, the trial court granted partial summary judgment in favor of ODOT, finding that the decisions made by ODOT concerning what traffic control devices to install at the intersection were discretionary decisions for which ODOT was entitled to immunity. However, the court found that there existed genuine issues of material fact relative to the sight distance at the intersection and the issue of proximate cause.

{¶ 5}   On August 8, 2012, ODOT filed a second motion for summary judgment. On September 12, 2012, the Court of Claims granted ODOT's motion for summary judgment. The court concluded that the intersection conformed to the minimum sight distance

standards set forth in the 1993 edition of the Location and Design Manual ("L & D manual"), which was the manual in effect at the time of the original construction; even though the 1993 L & D manual only required additional safety measures at intersections where the minimum sight distance standards cannot be provided, ODOT installed overhead flashing lights and advance warning signs after the original construction; because the installation of the overhead flashing lights and advance warning signs were highway "maintenance" and not highway "construction" or "improvements," ODOT did not have a duty to upgrade the entire intersection to current design standards set forth in later editions of the L & D manual. Appellants appeal the judgment of the trial court, asserting the following assignment of error:

> THE TRIAL COURT ERRED WHEN IT HELD THAT REASONABLE MINDS COULD ONLY CONCLUDE THAT DEFENDANT WAS ACTING IN THE COURSE OF MAINTENANCE WHEN INSTALLING ADVANCE WARNING SIGNS AND OVERHEAD FLASHERS IMPOSING NO DUTY TO UPGRADE THE INTERSECTION TO CURRENT DESIGN STANDARDS.

{¶ 6}   Appellants argue in their assignment of error that the trial court erred when it granted summary judgment in favor of ODOT. Summary judgment is appropriate when the moving party demonstrates that: (1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds can come to but one conclusion when viewing the evidence most strongly in favor of the non-moving party, and that conclusion is adverse to the non-moving party. *Hudson v. Petrosurance, Inc.*, 127 Ohio St.3d 54, 2010-Ohio-4505, ¶ 29; *Sinnott v. Aqua-Chem, Inc.*, 116 Ohio St.3d 158, 2007-Ohio-5584, ¶ 29. Appellate review of a trial court's ruling on a motion for summary judgment is de novo. *Hudson* at ¶ 29. This means that an appellate court conducts an independent review, without deference to the trial court's determination. *Zurz v. 770 W. Broad AGA, L.L.C.*, 192 Ohio App.3d 521, 2011-Ohio-832, ¶ 5 (10th Dist.); *White v. Westfall*, 183 Ohio App.3d 807, 2009-Ohio-4490, ¶ 6 (10th Dist.).

{¶ 7}   When seeking summary judgment on the ground that the non-moving party cannot prove its case, the moving party bears the initial burden of informing the trial

court of the basis for the motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact on an essential element of the non-moving party's claims. *Dresher v. Burt*, 75 Ohio St.3d 280, 293 (1996). The moving party does not discharge this initial burden under Civ.R. 56 by simply making a conclusory allegation that the non-moving party has no evidence to prove its case. *Id.* Rather, the moving party must affirmatively demonstrate by affidavit or other evidence allowed by Civ.R. 56(C) that the non-moving party has no evidence to support its claims. *Id.* If the moving party meets its burden, then the non-moving party has a reciprocal burden to set forth specific facts showing that there is a genuine issue for trial. Civ.R. 56(E); *Dresher* at 293. If the non-moving party does not so respond, summary judgment, if appropriate, shall be entered against the non-moving party. *Id.*

{¶ 8} In the present case, appellants' claims sound in negligence. To recover on a negligence claim, a plaintiff must prove that: (1) the defendant owed the plaintiff a duty, (2) the defendant breached that duty, and (3) the breach of the duty proximately caused the plaintiff's injury. *Wallace v. Ohio Dept. of Commerce,* 96 Ohio St.3d 266, 2002-Ohio-4210, ¶ 22. The duty element of a negligence claim may be established by common law, legislative enactment, or the particular circumstances of a given case. *Id.* at ¶ 23.

{¶ 9} As outlined above, in finding ODOT was not negligent, the trial court made three relevant findings: (1) the intersection conformed to the minimum sight distance standards set forth in the L & D manual, which was the manual in effect at the time of the original construction, (2) even though the L & D manual only required additional safety measures at intersections where the minimum sight distance standards cannot be provided, ODOT installed overhead flashing lights and advance warning signs after the original construction, and (3) because the installation of the overhead flashing lights and advance warning signs were highway "maintenance" and not highway "construction" or "improvements," ODOT did not have a duty to upgrade the entire intersection to current design standards set forth in later editions of the L & D manual after it installed the flashing lights and advance warning signs.

{¶ 10} Appellants narrow the issue before us to whether ODOT's addition of the overhead flashing lights and advance warning signs constituted "substantial improvements" or "maintenance." ODOT's duty to maintain the highways does not

encompass a duty to redesign or reconstruct the highways. *Sobczak v. Ohio Dept. of Transp.*, 10th Dist. No. 09AP-388, 2010-Ohio-3324, ¶ 7. " 'Maintenance involves only the preservation of existing highway facilities, rather than the initiation of substantial improvements.' " *Id.*, quoting *Wiebelt v. Ohio Dept. of Transp.*, 10th Dist. No. 93AP-117 (June 24, 1993). Thus, ODOT does not have a duty to upgrade highways to current design standards when acting in the course of maintenance. *Id.* However, when designing, redesigning, constructing, or reconstructing a highway project, ODOT must adhere to current written standards in order to fulfill its duty of care. *Lunar v. Ohio Dept. of Transp.*, 61 Ohio App.3d 143, 146 (10th Dist.1989).

{¶ 11} Appellants claim that ODOT's erection of flashing lights and advance warning signs in 2000 and 2004 constituted substantial improvements because it necessarily involved design and construction. Appellants contend that ODOT determining the height and location of the warning signs, as well as the number, location, and height of the yellow and red flashers, involved "design," while the erecting of poles needed for the flashing lights, the stringing of electric wires, the securing of wires to the flashers, and the providing of electricity to the wires involved "construction." Accordingly, appellants argue that these circumstances amounted to a substantial improvement rather than the preservation and maintenance of an existing highway, thereby requiring ODOT to adhere to the current L & D manual standards in place at the time of the installation of the signs and lights.

{¶ 12} There is a dearth of case law providing definitions of the terms "maintenance," "substantial improvement," "preserving," "designing," "redesigning," "constructing," and "reconstructing," as used in the present context. This court could find only a few cases that shed light on some of these terms. In *Estate of Morgan v. Ohio Dept. of Transp.*, 10th Dist. No. 10AP-362, 2010-Ohio-5969, ¶ 14, this court found that, where no guardrails existed previously on a roadway, ODOT's installation of new guardrails constituted an "improvement." In *Rahman v. Ohio Dept. of Transp.*, 10th Dist. No. 05AP-439, 2006-Ohio-3013, ¶ 30, this court found that a highway project that widened and paved the shoulders on the roadway; widened all four travel lanes; changed the width, grade, and surface of the median; and added paved turn lanes was not a "redesign," "construction," or "reconstruction" operation but was merely "rehabilitative" and

"maintenance." In *Hurier v. Ohio Dept. of Transp.*, 10th Dist. No. 01AP-1362, ¶ 29, we found that ODOT's resurfacing and asphalt patching of a roadway constituted "maintenance."

{¶ 13} We note that in a different context, that being governmental immunity, the Supreme Court of Ohio discussed the meaning of "maintenance." In *Coleman v. Portage Cty. Engineer*, 133 Ohio St.3d 28, 2012-Ohio-3881, ¶ 26, the court quoted *Murray v. Chillicothe*, 164 Ohio App.3d 294, 2005-Ohio-5864 (4th Dist.), which found that Webster's Dictionary defines "maintenance" as the " 'act of maintaining or state of being maintained.' " *Id.*, quoting *Webster's New College Dictionary* 660 (1999). The dictionary then defines "maintain" as "[t]o preserve or keep in a given existing condition, as of efficiency or good repair." *Id*. This definition is helpful to the present case, though not controlling.

{¶ 14} Although *Morgan* and *Rahman* are clearly not on all fours with the present case because of their differing facts, they are the most applicable to the present circumstances. We find *Morgan* the more instructive of the two cases, and conclude that the addition of warning signs and lights in the current case amounts to an "improvement." Like the guardrail in *Morgan*, structural elements in the present case were added to the existing highway in order to improve safety and usability. Also similar to the guardrail in *Morgan*, the flashers and signs were added here where none existed previously. It cannot be said that the addition of completely new components constitutes maintaining the roadway. The circumstances here are unlike those in *Rahman*, where changes were made to the roadway merely to preserve the existing highway and keep the roadway in good repair without totally reconstructing or redesigning the roadway. Therefore, we find that ODOT's erection of flashing lights and advance warning signs in 2000 and 2004 constituted improvements rather than maintenance.

{¶ 15} Having found the installation of flashing warning lights and advance warning signs constituted "improvements," we find our analysis to be at an end. Although we previously mentioned without comment the term "substantial improvements," in *Wiebelt*, the use of "substantial" does not further aid our analysis. The pertinent distinction is between "preservation" of existing highway facilities and "improvements" to highway facilities. In *Morgan*, although we cited *Wiebelt* for the "substantial

improvements" standard, we did not use it in our analysis and found it only necessary to conclude that "[t]he duty to maintain does not include a duty to institute improvements. In that case, where no guardrails existed previously, the installation of new guardrails constituted an improvement." Therefore, we find that, in the present case, ODOT's erection of flashing lights and advance warning signs in 2000 and 2004 constituted improvements rather than maintenance. For the foregoing reasons, we find the trial court erred when it granted summary judgment in favor of ODOT, and appellants' assignment of error is sustained.

{¶ 16} Accordingly, appellants' assignment of error is sustained, the judgment of the Court of Claims of Ohio is reversed, and the matter is remanded for further proceedings in accordance with the law, consistent with this decision.

*Judgment reversed;*
*cause remanded.*

TYACK and CONNOR, JJ., concur.

_____