[Cite as *Bledsoe-Baker v. Trotwood*, 2019-Ohio-45.]

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**MONTGOMERY COUNTY**

| | | |
|---|---|---|
| VELDA BLEDSOE-BAKER, et al. | : | |
| | : | |
| Plaintiffs-Appellees | : | Appellate Case No. 28052 |
| | : | |
| v. | : | Trial Court Case No. 2017-CV-3721 |
| | : | |
| CITY OF TROTWOOD | : | (Civil Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 11th day of January, 2019.

. . . . . . . . . . .

GARY J. LEPPLA, Atty. Reg. No. 0017172 and PHILIP J. LEPPLA, Atty. Reg. No. 0089075, 2100 South Patterson Boulevard, Dayton, Ohio 45409
    Attorneys for Plaintiffs-Appellees

JEFFREY C. TURNER, Atty. Reg. No. 0063154, DAWN M. FRICK, Atty. Reg. No. 0069068 and KEVIN A. LANTZ, Atty. Reg. No. 0063822, 8163 Old Yankee Street, Suite C, Dayton, Ohio 45458

STEPHEN M. MCHUGH, Atty. Reg. No. 0018788 and AMELIA N. BLANKENSHIP, Atty. Reg. No. 0082254, 33 West First Street, Suite 600, Dayton, Ohio 45402
    Attorneys for Defendant-Appellant

. . . . . . . . . . . .

DONOVAN, J.

{¶ 1} Defendant-appellant City of Trotwood (hereinafter "the City") appeals an order of the Montgomery County Court of Common Pleas overruling its motion for summary judgment. The City filed a timely notice of appeal with this Court on July 5, 2018.

{¶ 2} The instant appeal concerns the operation of a sanitary sewer system overseen by the City. The City's Public Works Department (hereinafter "TPWD") is responsible for maintenance of the sewer system. One of the duties of the TPWD is to perform routine, weekly inspections of the sewer system in order keep it flowing properly. TPWD determines its inspection routes "based primarily upon where sewer trunk lines converge." TPWD employees travel the inspection routes in order to detect blockages in the sewer line, "typically by odor." If a blockage is suspected, the employee will then search the surrounding area for manholes (also referred to as "barrels") with elevated water levels. If an employee locates a manhole with an elevated water level, he or she will proceed to search manholes both upstream and downstream in order to isolate the blockage.

{¶ 3} Once a blockage is detected and isolated, the TPWD can employ several different tactics to clear the sewer line. For example, in the event that the blockage is confined to the manhole, the TPWD will use "a rod with a claw-like device to grasp and remove the blockage." The TPWD can also use the "Jet-Vac" truck to vacuum the blockage out of the manhole.

{¶ 4} If the blockage is located outside of the manhole and has entered into the main sewer line, the Jet-Vac truck can be used to force water into the line, thereby

dislodging the blockage and clearing the sewer line. Upon arriving at the site of the blockage, the operator of the Jet-Vac truck inserts a hose from the truck into the first unblocked manhole downstream from the obstruction. Attached to the end of the hose is a nozzle that directs the water from the Jet-Vac out of the rear of the nozzle. The force of the water exiting the rear of the nozzle propels the hose upstream where it eventually reaches the blockage. The Jet-Vac operator controls the volume and pressure of the water from the truck. The Jet-Vac truck's pumping capacity ranges from 0-2000 pounds per square inch (psi) of pressure, but the "typical operational range is 600-1000 psi." After the hose reaches the blockage, the operator retrieves a portion of the hose by reversing the roller on the front of the truck. The operator then releases the hose again to permit the water to force the nozzle back into the blockage. This process is repeated an average of three or four times until the blockage in the sewer line is cleared.

{¶ 5} On June 17, 2016, TPWD employee Dewayne Taylor was performing a routine sewer inspection when he detected an odor that he believed was emanating from a sewer blockage located near North Sunrise Avenue and Madison Street in Trotwood. Upon further investigation, Taylor discovered a series of manholes with elevated water levels in the area of Madison Street at Mcnay Court, Madison Street and Sunrise Avenue, and Madison Street and North Sunrise Avenue. After inspecting each of the manholes and determining that the blockage was located in the main sewer line, Taylor contacted the TPWD and requested the Jet-Vac truck.

{¶ 6} Shortly thereafter, TPWD employee Norman McKnight arrived in the Jet-Vac truck. McKnight inserted the hose from the Jet-Vac into the first manhole downstream from the blockage, forced water into the system in order to propel the hose upstream,

encountered a blockage, retrieved a portion of the hose, released the hose into the blockage again, and repeated the process approximately three or four additional times until the blockage cleared. McKnight stated that the hose traveled approximately fifty feet upstream before encountering the blockage.

{¶ 7} After the blockage was removed, McKnight and Taylor inspected the manholes upstream and downstream from where the blockage was encountered and found that sewage was flowing normally. McKnight stated that he returned to the area after lunch later that day and found that the sewage in the manholes was still flowing normally. McKnight stated that he returned to the TPWD and logged the activity.

{¶ 8} Plaintiff-appellee Velda Bledsoe-Baker and her husband David Baker (hereinafter "the Bakers") live at 11 North Sunrise Avenue in Trotwood, Ohio. The Bakers' home is serviced by the sewer system maintained and operated by the City and the TPWD. At approximately 1:30 p.m. on June 17, 2016, the Bakers' basement flooded with raw sewage, causing extensive property damage and physical harm to them. The Bakers allege that the backup of raw sewage into their basement occurred as a result of the negligence of the City when it removed the blockage in the main sewer line near their residence. The record establishes that the Bakers' residence is located approximately 736 feet and around a curve from the site of the blockage removed by the TPWD earlier in the day on June 17, 2016.

{¶ 9} On August 8, 2017, the Bakers filed a complaint alleging that "the City wrongfully attempted to clear a blockage from the sewer line by forcing pressure into the system, which blew the sewage blockage in the wrong direction and into the basement of the Baker home," and "negligently misapplied pressure" to the sewer system. Bakers'

Complaint, ¶ 5, 8. On September 11, 2017, the City filed an answer denying it was negligent when it removed the blockage from the main sewer line near the Bakers' residence on June 17, 2016. The City further asserted that, in the event it was found to have acted negligently, it was immune from liability pursuant to R.C. Chapter 2744.

{¶ 10} On February 13, 2018, the City filed a motion for summary judgment. Regarding the Bakers' negligence claim, the City submitted the report and affidavit of its expert, Kirk P. Wolf, a professional engineer. In his report, Wolf stated that neither the blockage nor the City's decision to use the Jet-Vac truck to force water into the sewer system on June 17, 2016, caused the Bakers' basement to flood with raw sewage because: 1) backups typically occur upstream from a blockage, and there were no such backups reported that day; and 2) there were no backups reported between the site of the blockage and the Bakers' residence. Wolf also stated that it was apparent that the City did not "pressurize" the sewer system in order to clear the blockage because that would have resulted in backups in homes upstream of the Bakers' residence, which did not occur.

{¶ 11} With respect to its claim of immunity, the City conceded that its maintenance of the sewer system is a proprietary function under R.C. 2744.01(G)(2)(d). Nevertheless, the City argued that if it was determined to be negligent under the exception provided for in R.C. 2744.02(B)(2), its immunity should be restored pursuant to R.C. 2744.03(A)(5), because the TPWD employees reasonably exercised judgment and discretion when they 1) selected the appropriate equipment to remove the blockage from the sewer line; and 2) determined the amount of water necessary to clear the blockage with the Jet-Vac hose.

{¶ 12} On March 5, 2018, the Bakers filed their memorandum in opposition to the City's motion for summary judgment. Initially, we note that although they did not include the claim in their complaint, the Bakers argued in their memorandum in opposition that not only was the City negligent for the manner in which it chose to clear the blockage from the sewer line (which allegedly resulted in a sewage backup in the Bakers' basement), the City also "negligently maintained its sewers, resulting in severe damage to Plaintiffs' home, and health." Additionally, while agreeing with the City that maintenance of the sewer system is a proprietary function under R.C. 2744.01(G)(2)(d), the Bakers argued that R.C. 2744.03(A)(5) does not apply so as to restore immunity to the city. Thus, the Bakers concluded that the City was not entitled to political subdivision immunity on their negligence claims. For the first time, the Bakers also argued that the doctrine of res ipsa loquitur applied in the absence of evidence in their memorandum in opposition that the City was negligent. Specifically, the Bakers argued that "[t]he application of res ipsa loquitur does not change the [Bakers'] claim, but merely allows [them] to prove [their] case through circumstantial evidence." Thus, the Bakers contended that the City was not entitled to summary judgment on their negligence claim.

{¶ 13} In support of their memorandum in opposition, the Bakers attached the affidavit of Bledsoe-Baker and a call log from the TPWD from the day of the incident. The call log was provided to the Bakers by the City during discovery and purported to establish that a second Trotwood homeowner called the City to report that his basement flooded with sewage after the TPWD used the Jet-Vac to remove the blockage from the sewer line near the Bakers' residence. However, portions of Bledsoe-Baker's affidavit and the call log were subject to a motion to strike filed by the City on March 15, 2018.

{¶ 14} On June 18, 2018, the trial court issued an order overruling the City's motion for summary judgment. Specifically, the trial court found that a question of fact existed as to what caused the sewer backup into the basement of the Bakers' home.

> While it may be a coincidence that, within hours of a nearby blockage being cleared by the City, a sewage back-up into Plaintiffs' home occurred that was unrelated, a question of fact exists as to whether (i) the City was negligent in either the maintenance of the sewer system which allowed the blockage to build up or in the manner in which the blockage was cleared, and (ii) any such negligence caused Plaintiffs' injuries and property damage.

Trial Court Dec. pg. 4.

{¶ 15} With respect to the immunity issue, the trial court found, without explanation, that a question of fact existed as to the applicability of the immunity statute's exceptions and provisions for re-establishing immunity. R.C. 2744.02(B)(2), R.C. 2744.03(A)(5). The trial court also overruled the City's motion to strike the requested portions of Bledsoe-Baker's affidavit, as well as the call log. However, the trial court noted that "it did not rely on the items requested to be stricken from the record in rendering its decision to overrule Defendant's motion for summary judgment." Trial Court Dec. pg. 6.

{¶ 16} It is from this judgment that the City now appeals.

{¶ 17} The City's sole assignment of error is as follows:

THE TRIAL COURT ERRED AS A MATTER OF LAW TO THE PREJUDICE OF THE DEFENDANT-APPELLANT WHEN IT DENIED TROTWOOD THE BENEFIT OF AN ALLEGED IMMUNITY UNDER CHAPTER 2744 OF THE

OHIO REVISED CODE.

{¶ 18} The City contends that the trial court erred by overruling its motion for summary judgment. Specifically, the City argues that the Bakers failed to adduce any evidence establishing the existence of a genuine issue of material fact regarding whether the City was negligent for the manner in which it chose to clear the blockage from the sewer line, which allegedly resulted in a sewage backup in the Bakers' basement. The City also argues that, even if it was determined to be negligent under the exception provided for in R.C. 2744.02(B)(2), its immunity should be restored pursuant to R.C. 2744.03(A)(5) because the TPWD employees reasonably exercised judgment and discretion when they 1) selected the appropriate equipment to remove the blockage from the sewer line; and 2) determined the amount of water necessary to clear the blockage with the Jet-Vac hose.

**Standard of Review**

{¶ 19} We review trial court decisions under Civ.R. 56 de novo. Under the rule, "[s]ummary judgment may not be granted unless the entire record demonstrates that there is no genuine issue of material fact and that the moving party is, on that record, entitled to judgment as a matter of law." *Hubbell v. Xenia*, 175 Ohio App.3d 99, 2008-Ohio-490, 885 N.E.2d 290, ¶ 15 (2d Dist.), citing Civ.R. 56. "The burden of showing that no genuine issue of material fact exists is on the moving party." *Id.*, citing *Harless v. Willis Day Warehousing Co.*, 54 Ohio St.2d 64, 375 N.E.2d 46 (1978). Summary judgment may not be granted unless, construing the evidence most strongly in the nonmoving party's favor, reasonable minds must conclude adverse to the nonmoving party. Civ.R. 56(C).

{¶ 20} "[T]he moving party bears the initial responsibility of informing the trial court of the basis for the motion, and identifying those portions of the record which demonstrate the absence of a genuine issue of fact on a material element of the nonmoving party's claim." *Dresher v. Burt*, 75 Ohio St.3d 280, 296, 662 N.E.2d 264 (1996). The trial court's decision must be based upon "the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action." Civ. R. 56(C). The nonmoving party has the reciprocal burden of specificity and cannot rest on the mere allegations or denials in the pleadings. *Id.* at 293, 662 N.E.2d 264.

{¶ 21} In *Dresher*, the Ohio Supreme Court held that a party who moves for summary judgment need not support its motion with affidavits provided that the party does not bear the burden of proof on the issues contained in the motion. *Dresher* at 277. Further, there is no requirement in Civ. R. 56 that any party submit affidavits to support a motion for summary judgment. *See, e.g.*, Civ. R. 56(A) and (B). *Id.* However, there is a requirement that a moving party, in support of a summary judgment motion, specifically point to something in the record that comports with the evidentiary materials set forth in Civ. R. 56(C). *Id.*

{¶ 22} Summary judgment is appropriate when there is no genuine issue as to any material fact. A "material fact" depends on the substantive law of the claim being litigated. *Hoyt, Inc. v. Gordon & Assocs., Inc.*, 104 Ohio App.3d, 598, 603, 662 N.E.2d 1088 (8th Dist.1995), citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

**Law and Analysis**

{¶ 23} R.C. Chapter 2744 establishes a three-step analysis to determine whether a political subdivision is immune from liability. *See, e.g., Cramer v. Auglaize Acres*, 113 Ohio St.3d 266, 270, 2007-Ohio-1946, 865 N.E.2d 9, ¶ 14. First, R.C. 2744 .02(A)(1) sets forth the general rule that a political subdivision is immune from tort liability for acts or omissions connected with governmental or proprietary functions. *See, e.g., Cramer; Colbert v. Cleveland*, 99 Ohio St.3d 215, 2003-Ohio-3319, 790 N.E.2d 781, ¶ 7; *Harp v. Cleveland Hts.*, 87 Ohio St.3d 506, 509, 721 N.E.2d 1020 (2000). The statute states: "Except as provided in division (B) of this section, a political subdivision is not liable in damages in a civil action for injury, death, or loss to person or property allegedly caused by any act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function."

{¶ 24} Second, R.C. 2744.02(B) lists five exceptions to the general immunity granted to political subdivisions under R.C. 2744.02(A)(1). *See, e.g., Cramer; Ryll v. Columbus Fireworks Display Co.*, 95 Ohio St.3d 467, 470, 2002-Ohio-2584, 769 N.E.2d 372, ¶ 25. Pertinent to the instant case, R.C. 2744.02(B)(2) states:

> Except as otherwise provided in sections 3314.07 and 3746.24 of the Revised Code, political subdivisions are liable for injury, death, or loss to person or property caused by the negligent performance of acts by their employees with respect to proprietary functions of the political subdivisions.

Whether a political subdivision is entitled to statutory immunity under R.C. Chapter 2744 presents a question of law. *See Conley v. Shearer*, 64 Ohio St.3d 284, 292, 595 N.E.2d 862 (1992); *Murray v. Chillicothe*, 164 Ohio App.3d 294, 2005-Ohio-5864, 842 N.E.2d 95, ¶ 11 (4th Dist.).

{¶ 25} Here, the parties do not dispute that the City is entitled to the general grant of immunity under R.C. 2744.02(A)(1). Instead, the dispute focuses on whether the R.C. 2744.02(B)(2) exception to immunity applies, and, if so, whether R.C. 2744.03(A)(5) re-instates immunity.

## Negligence Under R.C. 2744.02(B)(2)

{¶ 26} R.C. 2744.02(B)(2) subjects political subdivisions to liability for "the negligent performance of acts by their employees with respect to proprietary functions of the political subdivisions." Thus, before this provision removes a political subdivision's immunity, a plaintiff must demonstrate that the political subdivision's employees negligently performed a proprietary function. Accordingly, before R.C. 2744.02(B)(2) will remove a political subdivision's immunity, the plaintiff must establish: (1) the elements required to sustain a negligence action—duty, breach, proximate cause, and damages; and (2) that the negligence arose out of a "proprietary function." *See, generally, Gabel v. Miami E. School Bd.,* 169 Ohio App.3d 609, 2006-Ohio-5963, 864 N.E.2d 102, ¶ 39-40 (2d Dist.). A "proprietary function" includes "[t]he maintenance, destruction, operation, and upkeep of a sewer system." R.C. 2744.01(G)(2)(d). While it concedes that its sewer maintenance is a proprietary function, the City argues that the Bakers failed to adduce any evidence sufficient to create a genuine issue of material fact that TPWD employees negligently caused their basement to flood by using the Jet-Vac truck to force water into the sewer line to remove the blockage.

{¶ 27} As discussed previously, the Bakers attached Bledsoe-Baker's affidavit and a telephone call log from the TPWD to their memorandum in opposition to the City's motion for summary judgment. Initially, we note that Bledsoe-Baker's affidavit contains

some hearsay statements which we cannot consider in reviewing the trial court's decision to overrule the City's motion for summary judgment. Specifically, Bledsoe-Baker states in her affidavit that "[p]rofessional analysis by a plumber from Ed's Heating Cooling Plumbing Electric revealed on June 17, 2016 that the City had 'overpressurized' the sewer system," ostensibly causing sewage to "explode" into the Bakers' basement. In her affidavit, Bledsoe-Baker also indicates that she spoke with several TPWD employees and Trotwood city officials who either specifically informed her or gave her the impression that the City was responsible for the damage to her basement.

**{¶ 28}** Civ.R. 56(C) lists the types of evidentiary materials that a court may consider in rendering summary judgment; these include "the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, filed in the action." Absent an exception, hearsay may not be considered in a motion for summary judgment. *Johnson v. Southview Hosp.*, 2d Dist. Montgomery No. 25049, 2012-Ohio-4974, ¶ 20, citing *Knoth v. Prime Time Marketing Mgmt., Inc.*, 2d Dist Montgomery No. 20021, 2004-Ohio-2426, ¶ 13 ("It is fundamental that the evidence offered by affidavit in support of or in opposition to a motion for summary judgment must also be admissible at trial, albeit in different form, in order for the court to rely on it.")

**{¶ 29}** Evid.R. 801(C) defines hearsay as a "statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." A "statement," as included in the definition of hearsay, is an oral or written assertion or nonverbal conduct of a person if that conduct is intended by him as an assertion. Evid.R. 801(A). As previously stated, Bledsoe-Baker's affidavit certainly

contains a hearsay statement from a plumber regarding the alleged cause of the sewage backup in the Bakers' basement. Thus, we will not consider the plumber's statement. As to the purported admissions made by Trotwood officials/employees, we will not address whether they fall into a hearsay exception, as the trial court did not consider them in ruling on the immunity issues.

{¶ 30} Although the Bakers did not plead in their initial complaint that the City was liable for the original sewer blockage, they now argue that the City was responsible for causing the original blockage. The Bakers have not adduced any evidence in support of their claim that the City caused the original blockage. Rather, by arguing that res ipsa loquitur applies in the instant case, the Bakers contend that the City is strictly liable when a sewer blockage occurs. The Bakers, however, have not adduced any evidence regarding who or what caused the original blockage. In the absence of any evidence in that regard, we will not automatically impute liability to the City.

{¶ 31} Nevertheless, attached to the Bakers' memorandum in opposition was a "telephone log" from Hope Figgers, a TPWD employee as Exhibit B. As previously stated, the call log was provided to the Bakers by the City through discovery. The call log indicates that another Trotwood resident, Paul Lebel at 12 N. Sunrise Avenue, who lived in the same area as the Bakers, also called the City on June 17, 2016, at approximately 1:16 p.m. in order to report that sewage was backing up into his basement. The document that was provided by the City says "TROTWOOD 22" in the lower right-hand corner, which is the City's bate stamping notation.

{¶ 32} As previously discussed, the City filed a motion to strike this particular document with the trial court. Specifically, the City argued that since the Bakers failed

to attach a certified copy of the call log or an affidavit, the document was not properly authenticated, and should therefore be stricken. In its decision overruling the City's motion for summary judgment, the trial court stated that while it would not strike the call log, it did not rely upon the document in reaching its decision. Our review of a trial court's summary judgment decision, however, is de novo. Therefore, we are not bound by the trial court's decision to ignore the call log when it overruled the City's motion for summary judgment.

{¶ 33} Upon review, we conclude that the information regarding the sewage backup in Lebel's house contained in the call log, coupled with circumstantial evidence, creates a genuine issue of material fact as to whether the City was negligent in clearing the blockage from the sewer line. An inference can be drawn that the City acted negligently. Significantly, another basement in the same area as the Bakers' residence backed up with sewage shortly after the blockage was cleared with the Jet-Vac truck. Although the City argues that Exhibit B should be stricken from the record below, we find that any challenge to the authenticity of the call log is severely undermined by the fact that the City provided the document to the Bakers during discovery. For the City to argue that a document that it provided to the other party during discovery is somehow untrustworthy is disingenuous at best. *See Hubbard v. Defiance*, 3rd Dist. Defiance Nos. 4-12-22, 4-12-23, 2013-Ohio-2144, ¶ 36. We also note that the call log bears the City's bate stamp notation, TROTWOOD 22, further establishing that the document is authentic. Accordingly, we agree with the trial court, albeit apparently in part for other reasons, that a genuine issue of material fact exists as to whether the City acted negligently when it cleared the blockage from the sewer line using the Jet-Vac truck. Two neighbors with

basement backups after the blockage was cleared is certainly circumstantial evidence of negligence sufficient to create a genuine issue of material fact. Because the City's sewer maintenance is a proprietary function and a question of fact exists with respect to the City's negligence, it may therefore be subject to liability under R.C. 2744.02(B)(2).

### Reinstatement of Immunity Under R.C. 2744.03(A)(5)

{¶ 34} R.C. 2744.03(A) provides in pertinent part:

In a civil action brought against a political subdivision or an employee of a political subdivision to recover damages for injury, death, or loss to person or property allegedly caused by any act or omission in connection with a governmental or proprietary function, the following defenses or immunities may be asserted to establish nonliability:

* * *

(5) The political subdivision is immune from liability if the injury, death, or loss to person or property resulted from the exercise of judgment or discretion in determining whether to acquire, or how to use, equipment, supplies, materials, personnel, facilities, and other resources unless the judgment or discretion was exercised with malicious purpose, in bad faith, or in a wanton or reckless manner.

{¶ 35} On appeal, the City argues that it can reestablish its immunity using the defense in R.C. 2744.03(A)(5). The City's argument in support of this defense is premised on its conclusion that its decision to use the Jet-Vac truck to force water through the sewer line to remove the blockage was a discretionary decision pursuant to R.C. 2744.03(A)(5). In support of its argument in this regard, the City cites to *Yetts v. Toronto,*

7th Dist. Jefferson No. 98-JE-6, 1999 WL 689964. In *Yetts*, after receiving citizen complaints about a sewer backup, the city inspected several manholes and located a blockage. *Id.* at \*1. In order to remove the blockage, water was forced into the system, causing some residents to experience a sewer back up. The residents alleged that there were two to three feet of sewage, including human waste, in their basements. Relying on 2744.03(A)(5), the *Yetts* court held that the city was immune from liability because "the decision to force water through the system, which caused the back up into appellants' basement, was a discretionary decision that is immune from liability." *Id.* at \*4. The City argues that the instant case is similar to *Yetts* in that the TPWD made a "discretionary decision" to use the Jet-Vac truck to force water into the sewer line to remove the blockage. Therefore, the City argues that like appellees in *Yetts*, its decision was a discretionary decision that is immune from liability under R.C. 2744.03(A)(5).

{¶ 36} *Yetts* is distinguishable from the instant case in two critical respects. In *Yetts*, the appellants did not respond to summary judgment with any affidavits, and *Yetts* involved a city's use of outside, contacted personnel to clear the blockages in the sewer line. Therefore, we disagree with the City that the *Yetts* decision mandates any specific outcome in the instant case .

{¶ 37} If an act of discretion is merely a choice between alternate courses of conduct, then almost every volitional act or omission involves an exercise of discretion. R.C. 2744.03(A)(5) cannot be interpreted that broadly, for to do so would comprehend anything and everything a political subdivision might do. Routine decisions requiring little judgment or discretion are not covered by the section. *Addis v. Howell*, 137 Ohio App.3d 54, 738 N.E.2d 37 (2d Dist.2000), citing *Perkins v. Norwood City Schools*, 85 Ohio St.3d

191, 707 N.E.2d 868 (1999).

{¶ 38} In *Murray v. Chillicothe*, 164 Ohio App.3d 294, 2005-Ohio-5864, 842 N.E.2d 95 (4th Dist.), the court recognized that injury resulting from an antiquated storm-sewer design has different legal significance from injury resulting from improper storm-sewer maintenance. The design, pursuant to R.C. 2744.01(C)(2)(l), is a governmental function, and under R.C. 2744.02, no liability can attach to the political subdivision for obsolete design. *Id.* at ¶ 18. Stated differently, "a private sewer system with a design flaw does not convert that design flaw into a maintenance responsibility." *Id.*

{¶ 39} In *Zimmerman v. Summit Cty.*, 9th Dist. Summit No. 17610, 1997 WL 22588 (Jan. 15, 1997), homeowners sued the county, alleging that the county had dumped sewage into a creek that ran through their property. *Id.* at *1. The county admitted that during severe rain storms, it pumped rain water and sewage from its sewer system into the creek to prevent sewage backups into basements. *Id.* at *2. It contended that "periodic pumping was necessary because the sewer system, as it was designed and constructed over twenty years before, could not handle all the rain water and sewage that currently pass through it" and noted that it had a permit from the Ohio Environmental Protection Agency to pump the sewage into the stream. *Id.*

{¶ 40} The trial court rejected the county's claim of immunity, but the court of appeals reversed. It held:

> Plaintiffs' claimed injuries and losses * * * were not caused by [the county's] maintenance and operation of its sewer system. Unlike other cases in which Ohio courts have recognized that actions taken with respect to sewer systems were proprietary in nature, plaintiffs' claimed injuries and losses

did not arise from [the county's] *failure to repair damage to the system*, to inspect it, to remove obstructions, or to remedy general deterioration. See *Doud v. Cincinnati* (1949), 152 Ohio St. 132[, 87 N.E.2d 243] (city allegedly failed to detect deterioration of sewer system) and *Nice v. Marysville* (1992), 82 Ohio App.3d 109[, 611 N.E.2d 468] (city failed to detect and repair damage to sewer system). Instead, they resulted from [the county's] original design and construction of the sewer system. As evidenced by [the county's environmental services director's] affidavit, [the county's] decision to pump sewage and rain water into the stream was a response to the sewer system's inability as designed and constructed to handle the volume of materials that currently pass through it. *This was not a problem that [the county] could remedy through routine maintenance*. It would require extensive redesigning and reconstructing of the system to meet current demands.

(Emphasis added.) *Id.* at *3.

**{¶ 41}** As we have explained, "[a] complaint is properly characterized as a maintenance, operation, or upkeep issue when '*remedying the sewer problem would involve little discretion but, instead, would be a matter of routine maintenance, inspection, repair, removal of obstructions, or general repair of deterioration.*' *Essman* [*v. Portsmouth*, 4th Dist. No. 09CA3325, 2010-Ohio-4837] at ¶ 32. But the complaint presents a design or construction issue if 'remedying a problem would require a [political subdivision] to, in essence, redesign or reconstruct the sewer system.' *Essman* at ¶ 32-33." (Brackets sic.) *Guenther v. Springfield Twp. Trustees*, 2d Dist. No. 2010-CA-114, 2012-Ohio-203, 970

N.E.2d 1058, ¶ 18.

{¶ 42} When a political subdivision's acts go beyond governmental functions (and when it acts in a proprietary nature) there is little justification for affording immunity to that political subdivision. *Greene Cty. Agricultural Soc. v. Liming,* 89 Ohio St.3d 551, 733 N.E.2d 1141 (2000). "Having entered into activities ordinarily reserved to the field of private enterprise, a [political subdivision] should be held to the same responsibilities and liabilities as are private citizens." *Schenkolewski v. Cleveland Metroparks Sys.*, 67 Ohio St.2d 31, 37, 426 N.E.2d 784 (1981).

{¶ 43} The R.C. 2744.03(A)(5) defense extends to activities that involve weighing alternatives or making decisions involving a high degree of official judgment or discretion. *Essman* at ¶ 54, citing *Enghauser Mfg. Co. v. Eriksson Eng. Ltd.*, 6 Ohio St.3d 31, 451 N.E.2d 228 (1983), paragraph two of the syllabus. "Routine decisions that require little judgment or discretion and that, instead, portray inadvertence, inattention, or unobservance do not create a defense to liability." *Tadijanac v. Jefferson Twp. Bellville Fire Dept.*, 5th Dist. Richland No. 14CA20, 2014-Ohio-4332, ¶ 48, citing *Frenz v. Springvale Golf Course & Ballroom*, 8th Dist. Cuyahoga No. 97593, 2012-Ohio-3568.

{¶ 44} In *Malone v. City of Chillicothe*, 4th Dist. Ross No. 05CA2869, 2006-Ohio-3268, the trial court denied the city's motion for summary judgment, claiming it was entitled to sovereign immunity related to a claim that sewage backup caused problems to Malone's property, despite the city's contention "that its decision regarding the maintenance of its sewer system, including whether a particular line needed to be replaced or repaired, *involved the exercise of discretion.*" (Emphasis added.) *Id.* at ¶ 4-5. On appeal, the city argued that it was entitled to statutory immunity under R.C.

2744.03(A)(5), which it claimed absolved it from liability for decisions regarding the repair of the sewer system. Similar to the instant appeal, the city argued that decisions regarding repair of the sewer system "involved the exercise of judgment or discretion in determining how to use personnel and resources." *Id.* at ¶ 8. In response to the city's argument, the *Malone* court concluded that "the city's decision regarding the sewer repair does not involve the creative exercise of political judgment that goes to the heart of government. Its decision regarding whether, when, and how to comply with its duty to maintain the sewer does not fall within the R.C. 2744.03(A)(5) exception." *Id.* at ¶ 20.

{¶ 45} In light of the foregoing, we find that the City's decision to force water into the sewer line with the Jet-Vac truck was *not* a discretionary decision pursuant to R.C. 2744.03(A)(5), because the City has provided no evidence of any specific decision that it made regarding its alleged negligence that involved weighing alternatives or a high degree of official judgment or discretion. If proven, the City's negligent performance of its proprietary function of repairing and maintaining its storm drainage system would expose it to liability under R.C. 2744.02(B)(2), and immunity could not be reinstated under R.C. 2744.03(A)(5). Thus, we conclude that the trial court did not err in determining that genuine issues of material fact exist and that the City was not entitled to summary judgment as to the issue of immunity.

{¶ 46} The City's sole assignment of error is overruled.

{¶ 47} The City's assignment of error having been overruled, the judgment of the trial court is affirmed.

. . . . . . . . . . . .

HALL, J. and TUCKER, J., concur.


Copies sent to:

Gary J. Leppla
Philip J. Leppla
Jeffrey C. Turner
Dawn M. Frick
Kevin A. Lantz
Stephen M. McHugh
Amelia N. Blankenship
Hon. Barbara P. Gorman